**Bert R. SLAVENS and Kim West, Appellants (Petitioners),**

v.

**The BOARD OF COUNTY COMMISSIONERS for UINTA COUNTY, Wyoming; Casey Davis, John R. Stevens, Patrick Mulhall, and Paul Barnard, in their individual and official capacities, Appellees (Respondents).**

No. 92–230.

Supreme Court of Wyoming.

June 9, 1993.

Rehearing Denied July 20, 1993.

Bruce S. Asay, Cheyenne, for appellants.

Elizabeth Zerga of Herschler, Freudenthal, Salzburg, Bonds & Rideout, Cheyenne, for appellees.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

CARDINE, Justice.

Bert R. Slavens and Kim West filed suit against the Board of County Commissioners (Commissioners) for Uinta County claiming that they were wrongfully removed from their county jobs and sought recovery of damages for slander and defamation, intentional interference with prospective economic advantage, and other claims. The district court granted summary judgment for the Commissioners.

We affirm.

Appellants raise these issues:

1. Did the District Court err as a matter of law in granting the Appellees/Defendants' Motion for Summary Judgment?

2. Did the District Court err in refusing the Appellants' Motion to Amend Complaint?

### FACTS

Appellant Kim West was hired by the Uinta County Fair Board as the county fairgrounds superintendent in 1984. Under his job description with the Fair Board, he was to make available to travelers passing through the county, temporary board for their livestock. West was to keep monies he received for boarding or "off-loading" the livestock for travelers rather than the Fair Board paying him overtime. Because of disagreements between him and the Fair Board, in 1985 West was transferred from working for the Fair Board to working for the Public Works Department. While at the Public Works Department, West worked under appellant Bert Slavens who was Director of Public Works. During 1984 through 1990, West continued the livestock off-loading practice.

In 1990, the Uinta County Prosecuting Attorney received a report concerning West's livestock off-loading practice. The County Commissioners were made aware of the report, and a "sting" operation was organized. In the sting, fifty-two head of cattle were off-loaded onto the Uinta County Fairgrounds. Mr. West charged $52.00, which he kept. After the "sting," on December 31, 1990, the county attorney filed a criminal complaint against West charging him with misconduct of a public servant. The prosecutor also filed a criminal complaint against Bert Slavens, alleging that he committed official misconduct, conspiracy and wrongful appropriation of public property. The same day, West and Slavens received notice that they were being dismissed from their county jobs. The criminal charges were dismissed on January 3, 1991, on the prosecutor's motion.

The notices of dismissal indicated that the County Commissioners would hold a "Hearing Pending Dismissal." West and Slavens did not respond to the offer to hold

a hearing. Instead, appellants filed suit in United States District Court alleging civil rights violations. The federal district court judge granted summary judgment for the Commissioners.

An administrative hearing was held on July 24, 1991, to consider disciplinary action against both West and Slavens. The hearing was held before a hearing examiner, and both parties appeared and examined witnesses. As a result of the hearing examiner's decision, Slavens was not reappointed as Director of the Public Works Department, and West was suspended for ten days. West and Slavens appealed the administrative decision to the Third Judicial District Court. The district court affirmed the decision of the administrative hearing officer. West and Slavens chose not to appeal the administrative decision further.

However, West and Slavens then filed this suit in state district court. Their complaint included claims for slander and defamation, intentional interference with prospective economic advantage, violation of the duty of good faith and fair dealing, constitutional violations relating to reputation, outrageous misconduct or intentional infliction of emotional distress, and malicious prosecution. Slavens also asserted a claim for failure to pay wages. West and Slavens requested compensatory and punitive damages. The Commissioners answered and moved for summary judgment. The district court granted summary judgment to the Commissioners. The district judge found that since West and Slavens had a full opportunity to present their case before the impartial hearing examiner and that decision became final with affirmance after appeal to the district court and no further appeal, the doctrines of res judicata and collateral estoppel applied and required summary judgment in favor of the Commissioners.

### SUMMARY JUDGMENT

When reviewing a grant of summary judgment, we utilize our oft-repeated standard of review. We examine whether a genuine issue of material fact exists and whether the prevailing party was entitled to judgment as a matter of law. *Davidson v. Sherman*, 848 P.2d 1341, 1343 (Wyo. 1993); W.R.C.P. 56(c).

The district court found that the doctrines of res judicata and collateral estoppel both applied and that there were no genuine issues of material fact which barred summary judgment. Appellants argue that the issues involved in this case have not been totally litigated and that the doctrines of res judicata and collateral estoppel do not apply.

▪ This court has held that both res judicata and collateral estoppel apply to final adjudicative determinations by administrative tribunals. *Salt Creek Freightways v. Wyoming Fair Employment Practices Comm'n*, 598 P.2d 435, 437 (Wyo.1979). In fact, this court has noted that it is almost universally recognized that the two doctrines apply to adjudicative administrative decisions. *Salt Creek Freightways*, 598 P.2d at 437; *Joelson v. City of Casper*, 676 P.2d 570, 572 (Wyo. 1984); *and see Batson v. Shiflett*, 325 Md. 684, 602 A.2d 1191, 1200 (1992). The United States Supreme Court has also held that administrative decisions may have res judicata effect. *United States v. Utah Const. & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966). And recently the United States Supreme Court stated:

> We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *United States v. Utah Const. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).

*Astoria Federal Savings & Loan Ass'n v. Solimino*, —— U.S. ——, ——, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96, (1991). In *Salt Creek Freightways*, we noted that al-

though many cases speak of res judicata in the administrative context, they actually apply collateral estoppel. *Salt Creek Freightways*, 598 P.2d at 437. Collateral estoppel is the appropriate doctrine since collateral estoppel bars relitigation of previously litigated *issues. Salt Creek Freightways*, 598 P.2d at 438 (*quoting Roush v. Roush*, 589 P.2d 841, 843 (Wyo. 1979) (per curiam)). *See also Bresnahan v. May Dept. Stores Co.*, 726 S.W.2d 327, 329 (Mo.1987) (when a fact is properly determined in one legal proceeding, it is given effect in another lawsuit). Res judicata on the other hand bars relitigation of previously litigated *claims* or causes of action. *Salt Creek Freightways*, 598 P.2d at 437. *See also Batson v. Shiflett*, 602 A.2d at 1201 (*quoting Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). Since administrative decisions deal primarily with issues rather than causes of action or claims, collateral estoppel is the appropriate doctrine. *Salt Creek Freightways*, 598 P.2d at 437.

■ To analyze whether the doctrine of res judicata applies, we have examined actions for these four factors:

> (1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; [and] (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them.

*Moore v. Moore*, 835 P.2d 1148, 1151 (Wyo. 1992) (*quoting CLS v. CLJ*, 693 P.2d 774, 775–76 (Wyo.1985)). *See also CSP v. DDC*, 842 P.2d 528, 532–33 (Wyo.1992). The factors that have been used to determine whether collateral estoppel applies are similar. *State v. $11,346.00 in U.S. Currency*, 777 P.2d 65, 68 (Wyo.1989). When determining whether collateral estoppel applies, courts should consider four factors: (1) whether the issue decided in the prior adjudication was *identical* with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Bresnahan v. May Dept. Stores Co.*, 726 S.W.2d at 330 (*quoting Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo.1979)). *See also Utah Const.*, 384 U.S. at 421–22, 86 S.Ct. at 1559–60; *State v. $11,346.00 in U.S. Currency*, 777 P.2d at 68.

■ Applying the above collateral estoppel factors, we determine that West and Slavens were collaterally estopped from bringing this action. Here, all the elements of collateral estoppel are satisfied. First, the issue decided in the administrative adjudication was identical with the issue appellants seek to raise in this lawsuit—whether the Board of County Commissioners wrongfully took disciplinary action against West and Slavens. Second, the decision made by the hearing examiner did result in a judgment on the merits—the hearing examiner . determined, after hearing all the evidence and testimony, that the cattle off-loading activities were improper since county property was used for personal pecuniary gain. Third, the Board of County Commissioners and the individual commissioners were parties to the administrative hearing and are the identical parties named in this action. Fourth, appellants had a full and fair opportunity to litigate the issues in the prior administrative hearing. The hearing was conducted before an independent hearing examiner. All sides were allowed to present evidence, provide opening and closing statements, and to cross-examine witnesses. The hearing examiner's decision was then reviewed by a district court that concluded the findings were proper and affirmed the decision.

■ Appellants' failure to appeal the district court's decision reviewing the hearing examiner's decision also plays a part in our determination. Not only did appellants receive a full and fair hearing, they were also provided an opportunity to appeal the decision of the district court if they believed it to be in error. They did not do so and instead filed this collateral suit. Other courts have barred the subsequent action when no appeal was taken from the initial

administrative decision. *Neunzig v. Seaman Unified Sch. Dist.*, 239 Kan. 654, 722 P.2d 569, 576 (1986); *Umberfield v. Sch. Dist. No. 11*, 185 Colo. 165, 522 P.2d 730, 734 (Colo.1974).

Appellants argue that Wyoming Rule of Appellate Procedure 12.12 specifically allows them to bring this suit. Rule 12.12 provides:

> The relief, review, or redress available in suits for injunction against agency action or enforcement, in actions for recovery of money, in actions for a declaratory judgment based on agency action or inaction, in actions seeking any common law writ to compel, review or restrain agency action shall be available by independent action notwithstanding any petition for review.

■ Appellants assert that W.R.A.P 12.12 provides authority for the complaint they filed and therefore the district court erred in granting summary judgment against them. It is true that Rule 12.12 allows several forms of relief for those who wish to challenge an agency action. However, W.R.A.P. 12.12 does not provide for a collateral attack against an agency action when the agency action has already been reviewed in district court by a petition for review. In addition, W.R.A.P. 12.12 is not an exception to the doctrine of collateral estoppel.

Since we determine that collateral estoppel applies, we need not reach the other issues raised (statute of limitations and governmental immunity act) that support the grant of summary judgment. We conclude that the district court properly granted summary judgment because appellants were collaterally estopped from bringing the action.

### MOTION TO AMEND COMPLAINT

Appellants argue that the district court erred by denying their motion to amend their complaint. They argue that W.R.C.P. 15 allows for liberal amendment of complaints and that a party can serve supplemental pleadings under Rule 15(d). Rule 15 provides:

(a) *Amendments.*—A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served, or if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. * * *

    *      *      *      *      *      *

(d) *Supplemental pleadings.*—Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense.

■ Whether to permit an amendment or supplementation of the pleadings is within the sound discretion of the district court. W.R.C.P. 15; *Herrig v. Herrig*, 844 P.2d 487, 490 (Wyo.1992); *Narans v. Paulsen*, 803 P.2d 358, 363 (Wyo.1990).

■ We find no abuse of discretion. Appellants' motion to amend was filed four days after the district court had issued its decision letter on August 24, 1992. In *Narans*, we upheld a district judge's decision not to allow an amendment of pleadings on the eve of trial, *Narans*, 803 P.2d at 363, and there is less reason to allow amendment after a decision in the case had been made. Therefore, there was no abuse of discretion when the district judge denied the motion to amend. Finally, we note that although the substantive counts were listed differently in the amended complaint, the factual basis of the complaint remained the same and therefore it too would have been barred by collateral estoppel.

## CONCLUSION

The district court did not err in granting summary judgment as appellants' claims were barred by collateral estoppel. The district court did not abuse its discretion in denying appellants' motion to amend their complaint when the motion was made after the decision letter had been issued.

Affirmed.