2011 WY 33

Beverly GOODMAN, and the heirs and successors and assigns in the interest of Richard Goodman, Appellants (Respondents),

v.

Mark and Laura VOSS, Appellees (Petitioners),

and

In the Matter of a Petition for a Private Road.

Mark and Laura Voss, Appellants (Petitioners),

v.

Peter and Kim Stevens, and Beverly Goodman, and the heirs, assigns, and successors in interest of Richard Goodman, Appellees (Respondents).

Nos. S–10–0058, S–10–0115.

Supreme Court of Wyoming.

Feb. 25, 2011.

See also 203 P.3d 415, 74 P.3d 714.

Representing Appellants for Case No. S–10–0058: Gay Woodhouse and Deborah L. Roden of Woodhouse Roden, LLC, Cheyenne, Wyoming. Argument by Ms. Woodhouse.

Representing Appellees for Case No. S–10–0058: Mark T. Voss and Laura M. Voss of Cheyenne, Wyoming. Argument by Mr. Voss.

Representing Appellants for Case No. S–10–0115: Mark T. Voss and Laura M. Voss of Cheyenne, Wyoming. Argument by Mr. Voss.

Representing Appellees for Case No. S–10–0115: Daniel B. Frank of Frank Law Office, P.C., Cheyenne, Wyoming, for Appellees Stevens. Gay Woodhouse and Deborah L. Roden of Woodhouse Roden, LLC, Cheyenne, Wyoming, for Appellees Goodman.

Argument by Mr. Frank and Ms. Woodhouse.

Before GOLDEN, HILL, VOIGT, and BURKE, JJ., and PERRY, D.J.

VOIGT, Justice.

[¶1] These related cases come before us in their present iterations as W.R.A.P. 12.09(b) certifications from the district court. The battle is between neighboring landowners, with one seeking condemnation of a private road under Wyo. Stat. Ann. § 24–9–101 (LexisNexis 1999), and one contesting location of that road on her property.[1] The issues before the Court all involve decisions rendered by the Board of County Commissioners of Albany County, Wyoming (the Board), in exercising its authority under the statute. We will affirm in part and reverse in part, and remand to the district court for remand to the Board for entry of a judgment consistent herewith.

## ISSUES

[¶2] The issues have been stated somewhat differently in the parties' briefs than they were stated in the orders of certification. We view the following issues as being determinative:

1. Was Goodman's petition for review timely filed?

2. Do the doctrines of *res judicata* and collateral estoppel bar Goodman from relitigating the questions of whether the Vosses' property is landlocked and whether the Vosses acted in good faith in pursuing their petition under the statute?

3. Did the Board err as a matter of law in focusing upon damage to the Vosses' property instead of damage to Goodman's property, in locating the road?

4. Did the Board err as a matter of law in allowing the Vosses to install a cattle guard at the junction of their property and the private road?

5. Did the Board err as a matter of law in denying the Vosses' motion for an award of costs under W.R.C.P. 68?

---

1. The statute was amended in 2000. The 1985 version that governs this case last appeared in the 1999 edition of the Wyoming Statutes Annotated.

## STANDARD OF REVIEW

[¶ 3] We have stated our standard for the review of administrative agency action many times and need not repeat it at length here. *See Dale v. S & S Builders, LLC*, 2008 WY 84, ¶¶ 8–27, 188 P.3d 554, 557–62 (Wyo.2008). For present purposes, we will simply state that our review is guided by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2009), and that our focus in the instant case is upon the questions of whether the Board acted "not in accordance with law," or "in excess of statutory jurisdiction, authority or limitations or lacking statutory right."

## FACTS

[¶ 4] The background facts of this matter are set out in detail in *Voss v. Albany County Commissioners*, 2003 WY 94, 74 P.3d 714 (Wyo.2003) (*Voss I*), so they will be stated here in a more abbreviated fashion. The Vosses purchased a parcel of land in 1996. The property is bounded on the north and west by property owned by Richard and Beverly Goodman (Goodman), on the east by property owned by Peter and Kim Stevens (the Stevens), and to the south by federally owned land managed by the BLM.[2]

[¶ 5] There were no recorded access easements to the Vosses' property when they purchased it. They and their predecessors in interest usually entered the property from the south, crossing properties belonging to Air Capital Fireworks (Air Capital), Goodman, the Stevens, and the BLM. This route has been called the "Highway–BLM" Road. It connects to I–80 near the Buford exit.

[¶ 6] After purchasing their property, the Vosses obtained from the BLM a thirty-year renewable right-of-way across the federal land, and they obtained from the Stevens an access easement restricted by a provision that the easement would lapse if the Vosses ever conveyed less than their entire parcel. Goodmans tendered to the Vosses, and recorded, an unrestricted easement over their portion of the Highway–BLM Road.

[¶ 7] In 1998, the Vosses negotiated with the Stevens for the purchase of an unrestricted access easement over the Highway–BLM Road, as well as a separate easement through the Stevens' property further north. This latter route, called the Creek Road, would have provided access from the Vosses' property to a county road lying east of the Stevens' property. These negotiations were not successful.

[¶ 8] Early in 1999, the Vosses filed a petition with the Board pursuant to Wyo. Stat. Ann. § 24–9–101, alleging that their property was landlocked, and seeking condemnation of a private road along the Creek Road. This route crossed only the Stevens' property, but the Vosses also notified the Goodmans of the petition because the Goodmans held a mortgage on the Stevens' property. The viewers and appraisers appointed by the Board eventually rejected the Creek Road and recommended that the Board locate the private road along the Highway–BLM route, with a slight modification to avoid encroaching on Air Capital's property, because Air Capital had not been made a party to the proceedings. This recommendation was accepted by the Board and incorporated into a final plat.

[¶ 9] Both sides petitioned the district court for review of the Board's action. The district court remanded the matter to the Board based upon its conclusion that the BLM right-of-way grant did not provide adequate legally enforceable access to a public road. The district court also instructed the Board on remand to make an express determination whether the Vosses acted in good faith in bringing the petition. Both sides then appealed to this Court, resulting in *Voss I*.

[¶ 10] Resolution of the current controversy requires an understanding of what was determined in *Voss I*. First, we held that the thirty-year BLM right-of-way was not adequate to constitute access to a public road. *Voss I*, 2003 WY 94, ¶¶ 12–14, 74 P.3d at 719. Second, we held that the statute allows the viewers and appraisers to consider

---

2. Richard Goodman is now deceased. Generally, we use "Goodman" to refer to Beverly Goodman.

routes other than the route proposed in the petition, and we specifically noted that, upon remand, the Board was not "constrained to consideration of the Creek Road proposed by the Vosses." *Id.* at ¶ 16, at 720. Third, we concluded that the Board's order appointing viewers "necessarily implied in its decision" the fact that the Vosses' land was landlocked, and that all parties subsequently acted upon that assumption. *Id.* at ¶ 20, at 720–21. Fourth, we held that the district court had erred in instructing the Board to consider on remand whether the petition was filed in good faith. We compared this case to *Mayland v. Flitner*, 2001 WY 69, 28 P.3d 838 (Wyo.2001), where, despite the lack of a specific finding of good faith, the record revealed that the petitioners had considered alternate routes, that allegations of bad faith were raised below, and "that the requisite finding of good faith is implicit in the Board's conclusion that a private road is necessary." *Voss I*, 2003 WY 94, ¶ 25, 74 P.3d at 722. Fifth, we concluded that the restrictive Stevens' easement did not satisfy the access requirements of the statute. *Id.* at ¶¶ 31–32, at 723–24. Finally, we reiterated our dual conclusion that the Vosses had established the necessity of a private road and that they had acted in good faith in bringing their petition. *Id.* at ¶ 33, at 724.

[¶ 11] After we remanded the case to the Board, both Goodman and the Stevens recorded unrestricted access easements in favor of the Vosses covering their portions of the Highway–BLM Road. The Vosses rejected the easements by filing quitclaim deeds in which they asserted that the easement deeds were nothing more than an attempt to get around this Court's requirement that the Board consider other access routes.

[¶ 12] Shortly thereafter, the Vosses filed with the Board an amended petition seeking an entirely different access route, this being the "Goodman Road," which lies north of, and generally parallels the Stevens' and Vosses' properties, connecting on the east with a county road. The map accompanying the amended petition shows the proposed access easement as traversing the entire Goodman tract lying north of the Voss property, making a 180–degree loop on state

lands to the west, and terminating at the northwest corner of the Voss property. The amended petition also sought two access points off the proposed road, one at the Vosses' existing driveway and one at the easement's terminus.

[¶ 13] As the matter proceeded before the Board, the Vosses moved the Board to grant them temporary access via the Goodman Road *pendente lite.* That motion was heard by the Board on January 30, 2007, and granted on February 20, 2007. In response, Goodman filed a complaint in the district court seeking declaratory and injunctive relief on the ground that the private road statute did not authorize the Board to grant temporary access. The district court granted summary judgment to Goodman, and we affirmed the district court in *Voss v. Goodman*, 2009 WY 40, 203 P.3d 415 (Wyo.2009) (*Voss II* ).

[¶ 14] Meanwhile, the case had proceeded before the Board. Viewers' instructions were finalized on August 26, 2008, which instructions contained four alternative routes: the Creek Road, the Goodman Road, the Stevens Route (the original Highway–BLM route, but turning onto a "two track trail" on the Stevens' property to avoid the BLM land), and the Goodman Route (traversing Goodman's property from the county road westward to the Voss property, roughly parallel to but south of the Goodman Road). The Creek Road was the Vosses' first proposal. The Goodman Road was the Vosses' second proposal. The Stevens Route was the Stevens' proposal. The Goodman Route was Goodman's proposal.

[¶ 15] The viewers conducted the view on November 10, 2008, and presented their recommendations to the Board nine days later. They selected the Goodman Road proposed by the Vosses, but ending at the northeast corner of the Vosses' property, cutting off a good deal of what the Vosses sought. Four significant features of the route selected are: (1) it was the shortest route across Goodman's property on an existing road; (2) any roadway west and south of the Vosses' property line would be on the Vosses' property, rather than on Goodman's property; (3) by terminating east of Goodman's north-south

fence line and existing cattle guard, it limited access to Goodman's property; and (4) the viewers proposed that the Vosses be allowed to install a cattle guard in Goodman's east-west fence line at the point of access to the Voss property.

[¶ 16] After a two-day hearing in May of 2009, the Board issued a final ruling granting the Vosses access along the Goodman Road, but extending that access roughly one-quarter mile west of the viewers' proposed terminus at the northeast corner of the Vosses' property to a location where the Vosses had installed a gate in Goodman's east-west fence line. Perhaps the most significant feature of this extension by the Board, beyond the fact that it took more of Goodman's property than what the viewers recommended, is that it extended the easement west of Goodman's north-south fence line and cattle guard, thereby increasing the risk to Goodman of uncontrolled access to her property.

[¶ 17] Two petitions for review have been certified to this Court by the district court, and have been consolidated for purposes of this opinion. Docket No. S–10–0058 is Goodman's challenge of the above-described final order of the Board. Docket No. S–10–0115 is the Vosses' challenge of the Board's order denying their motion for an award of costs.

## DISCUSSION

### Was Goodman's petition for review timely filed?

[¶ 18] W.R.A.P. 12.04(a) governs the time for filing a petition for review:

(a) In a contested case, or in an uncontested case, even where a statute allows a different time limit on appeal, the petition for review shall be filed within 30 days after service upon all parties of the final decision of the agency or denial of the petition for a rehearing, or, if a rehearing is held, within 30 days after service upon all parties of the decision.

[¶ 19] The Board's order establishing the private road was entered on December 15, 2009. Goodman and the Vosses personally obtained copies of the order on that day. On December 16, 2009, the County Clerk mailed copies of the order to all counsel of record, to the hearing officer, and to the Board. Goodman filed her petition for review in the district court on January 15, 2010. On February 1, 2010, the Vosses filed a motion seeking dismissal of the petition for review on the ground that it was untimely filed. Primarily, they argued that January 15, 2010, was 31 days after December 15, 2009. In addition, they asserted that the Board's December 15 order was not a final order, because the plat still had to be filed and damages had to be paid, meaning that the petition for review was premature.

[¶ 20] The district court denied the motion to dismiss, concluding that, for purposes of W.R.A.P. 12.04(a), service of the petition occurred on December 16, 2009, meaning the petition was timely filed. The district court further concluded that the order was a final appealable order because it was a final agency decision whether or not the plat had been completed.

[¶ 21] After certification, the Vosses filed a similar dismissal motion in this Court, which we denied without prejudice on June 22, 2010. The Vosses then raised the issue again in their appellate brief in S–10–0058. Both sides now rely for the most part on the materials they filed in district court concerning the motion. Having considered those materials and the relevant statutes and court rules, we will again deny the motion to dismiss. We agree with the district court that the petition for review was filed thirty days after the date of service on all parties. The fact that some copies of the order may have been handed out on December 15 does not alter the fact that formal service was made on December 16.[3]

[¶ 22] We also agree with the district court that the December 15 order is an appealable order. It contains the findings of fact and conclusions of law required by Wyo. Stat. Ann. § 16–3–110 (LexisNexis 2009). It certainly is an "order affecting a substantial right made in a special proceeding" under

---

**3.** Although not raised by the parties, it should be noted that W.R.A.P. 14.03 gives a party an additional three days to act if he or she has been served by mail.

W.R.A.P. 1.05(b). It finally determined the necessity of a private road, it located the road, and it assessed damages. In short, it determined the merits of the controversy. *See In re Estate of Bell*, 726 P.2d 71, 80 (Wyo.1986) (order was final for purposes of W.R.A.P. 1.05 where this Court had "difficulty identifying matters not disposed of"); and *Public Serv. Comm'n v. Lower Valley Power & Light, Inc.*, 608 P.2d 660, 661 (Wyo.1980) (order that determines the merits and leaves nothing for further consideration is final and appealable).

**Do the doctrines of res judicata and collateral estoppel bar Goodman from relitigating the questions of whether the Vosses' property is landlocked and whether the Vosses acted in good faith in pursuing their petition under the statute?**

[¶ 23] Very recently, we reiterated the law of *res judicata* and collateral estoppel:

> We have previously recognized that:
>
> The doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) incorporate a universal legal principle of common-law jurisprudence to the effect that "a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies."
>
> *Wyoming Dept. of Revenue v. Exxon Mobil Corp.*, 2007 WY 112, ¶ 17, 162 P.3d 515, 522 (Wyo.2007).
>
> > Collateral estoppel and res judicata are analogous, but not synonymous. Although they share a common interest in finality, the doctrines themselves are different. *Tenorio v. State ex rel. Wyoming Workers' Compensation Div.*, 931 P.2d 234, 238 (Wyo.1997). We recently reiterated their differences:
> >
> > > In *Eklund v. PRI Environmental, Inc.*, 2001 WY 55, ¶¶ 15–20, 25 P.3d 511, [517–18] (Wyo.2001), we extensively recognized that res judicata and collateral estoppel are related but distinct concepts.

> > > Res judicata bars the relitigation of previously litigated claims or causes of action. *Slavens v. Board of County Commissioners*, 854 P.2d 683, 686 (Wyo.1993). Four factors are examined to determine whether the doctrine of res judicata applies: (1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them. *Id.* Collateral estoppel bars relitigation of previously litigated issues and involves an analysis of four similar factors: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.*

> > *Polo Ranch Co. v. City of Cheyenne*, 2003 WY 15, ¶ 12, 61 P.3d 1255, [1259] (Wyo.2003).

> > Collateral estoppel is issue preclusion, while res judicata is claim preclusion. *Eklund v. PRI Environmental, Inc.*, 2001 WY 55, ¶ 15, 25 P.3d 511, [517] (Wyo.2001).

*Pokorny v. Salas*, 2003 WY 159, ¶¶ 12, 13, 81 P.3d 171, 175 (Wyo.2003) (emphasis omitted). Application of the doctrines of collateral estoppel and res judicata involves questions of law that we review *de novo*. *Wilson v. Lucerne Canal & Power Co.*, 2007 WY 10, ¶ 23, 150 P.3d 653, 662 (Wyo.2007).

*Erwin v. State Dep't of Family Servs.*, 2010 WY 117, ¶ 10, 237 P.3d 409, 412–13 (Wyo. 2010).

[¶ 24] We have noted several times that both collateral estoppel and *res judicata*

apply to administrative proceedings. *Jacobs v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2009 WY 118, ¶ 12, 216 P.3d 1128, 1132 (Wyo.2009); *Slavens v. Bd. of County Comm'rs for Uinta County,* 854 P.2d 683, 685 (Wyo.1993); *Joelson v. City of Casper,* 676 P.2d 570, 572 (Wyo.1984). In the context of administrative proceedings, the application of collateral estoppel is more apt than is the application of *res judicata* because "administrative decisions deal primarily with issues rather than causes of actions or claims...." *Slavens,* 854 P.2d at 686. *See also Jacobs,* 2009 WY 118, ¶ 12, 216 P.3d at 1132; *Joelson,* 676 P.2d at 572.

 [¶ 25] We would be remiss if we did not also mention the related "law of the case" doctrine:

The "law of the case" doctrine stands for the proposition that a court's decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation. *Triton Coal Co. v. Husman, Inc.,* 846 P.2d 664, 667 (Wyo.1993); *see also* 1B *Moore's Federal Practice* ¶ 0.404[1] (2d ed. 1991). This doctrine is designed to avoid repetitious litigation and to promote consistent decision making; thus, it is related to res judicata, collateral estoppel and stare decisis. *Triton Coal,* at 667. Usually, the "law of the case" doctrine requires a district court to adhere to its prior rulings, adhere to the rulings of an appellate court, or adhere to another judge's rulings in the same case or a closely related case. *Triton Coal,* at 668; *see also* 18 Wright, Miller & Cooper, *Federal Practice and Procedure:* § 4478 (1981).

*Lyden ex rel. Lyden v. Winer,* 913 P.2d 451, 454 (Wyo.1996).

[¶ 26] The question presented can be answered in fewer words than it took to describe the standard of review. One need look no further than *Voss I,* where we affirmed the Board's conclusion that the Voss property was landlocked and the Board's conclusion that the Voss petition was filed in good faith. 2003 WY 94, ¶¶ 20, 25, 33, 74 P.3d at 720–21, 722, 724. The case was remanded to the Board solely for the purpose of locating a private road easement that did not suffer from the deficiencies of the previously selected route. Both issues—whether the Voss property is landlocked and whether the Vosses acted in good faith—are barred by collateral estoppel and the law of the case doctrine.

[¶ 27] Additional comment is appropriate as to Goodman's argument on this issue. Goodman relies upon the following language from *Reidy v. Stratton Sheep Co.,* 2006 WY 69, ¶ 23, 135 P.3d 598, 607 (Wyo.2006), as a sort of pronouncement from this Court that the question of access along the BLM Road was still an open question in this case:

Stratton contends FS 807 is not a public road because it could be closed at some time in the future, and the access provided by the road, therefore, is not "legally enforceable" under the statute. The board's decision letter indicates it followed a similar rationale, stating: "[t]here is no legally enforceable right to use the Forest Road 807 by any member of the public according to the evidence." It appears this reasoning stems from a misreading of our opinion in *Voss* to the effect that the right to use a public road on federal land must be "legally enforceable." In *Voss,* we concluded a personal thirty year right-of-way grant/temporary use permit over BLM land was not "legally enforceable access" to the public road in question—a county road. *Voss,* ¶ 13, 74 P.3d at 719. By its terms, the grant terminated after thirty years and, although it was renewable at that time, renewal was not guaranteed. Furthermore, the permit was personal and did not "pass automatically upon conveyance of the property." *Id.* Instead, the grant was assignable only upon approval by the BLM. *Id. Because it was obviously a personal right-of-way, we did not directly address the issue of whether the access road over BLM property in Voss was a public road.*

(Emphasis added.)

[¶ 28] Goodman is reading too much into this passage. In *Reidy,* the relevant inquiry was whether an adjoining Forest Service Road was a public road, thereby providing such access to the neighboring landowners that their property was not landlocked. We

concluded that it was, indeed, a public road, and we therefore reversed the Board's grant of a private road easement under the statute. *Id.* at ¶ 40, at 612. The highlighted sentence in the passage above merely states that we did not consider, in the *Voss* case, whether the BLM Road was a public road because the only question was whether the thirty-year personal right-of-way provided legally enforceable access. The statement was not intended as an invitation to reopen issues in this case that had already been decided by the Board, and affirmed by both the district court and this Court. The issue before the Board, and later before the courts, was whether the property was landlocked. Proof came in the form of evidence of a restricted right-of-way and restricted access easements. Proof also could have come in the form of evidence that the BLM Road was a public road, but that did not happen. The later realization that the argument should have, or at least could have, been made, does not reopen the prior decisions.

[¶ 29] The above logic also precludes Goodman from now raising other possible arguments as to why the Voss petition was not filed in good faith. That would include the contention that it was bad faith not to include Air Capital as a respondent, and the contention that the Vosses first should have sought to prove a prescriptive easement over the Stevens' and Air Capital's lands. Furthermore, those contentions have no merit. There is no requirement in the statute that a petitioner name as a respondent a nearby landowner over whose land the proposed road does not pass. *Dunning v. Ankney,* 936 P.2d 61, 65 (Wyo.1997). And we have said many times over the years that the private road statute does not require a petitioner to "overcome every obstacle" before utilizing the statute. *See, e.g., Wagstaff v. Sublette County Bd. of County Comm'rs,* 2002 WY 123, ¶¶ 11, 13, 18, 53 P.3d 79, 82, 83, 84 (Wyo.2002) (landowner not required first to pursue common law way of necessity or potentiality that a road over State and BLM property is a public road that should be maintained); *Mayland,* 2001 WY 69, ¶ 26, 28

P.3d at 848 (landowner not "required to accomplish detailed title searches, legal analyses of ownership interests, and even, possibly, quiet title actions"); *Miller v. Bradley,* 4 P.3d 882, 887 (Wyo.2000) (landowner not required to pursue common law way of necessity or implied easement or other forms of relief prior to seeking relief under the statute); *Lindt v. Murray,* 895 P.2d 459, 462–63 (Wyo.1995) (potential remedy of implied easement not relevant to determination of necessity); *Walton v. Dana,* 609 P.2d 461, 463 (Wyo.1980) (decision whether to pursue common law way of necessity or proceed under the statute is exclusive choice of petitioner).[4] These decisions are consistent with our general interpretation of the legislature's intent in the private road statute to "provide in a local forum a readily available, economically affordable, and time efficient method to obtain a means of access to property." *Wagstaff,* 2002 WY 123, ¶ 12, 53 P.3d at 82 (quoting *Martens v. Johnson County Bd. of Comm'rs,* 954 P.2d 375, 380 (Wyo.1998)). *See also Mayland,* 2001 WY 69, ¶ 26, 28 P.3d at 848.

### *Did the Board err as a matter of law in focusing upon damage to the Vosses' property instead of damage to Goodman's property, in locating the road?*

[¶ 30] The 1985 version of the statute contained the following sentence, which is the focus of this issue:

> The proposed road shall not exceed thirty (30) feet in width from a certain point on the premises of the applicant to some certain point on the public road, *and shall be located so as to do the least possible damage to the lands through which the private road is located.*

Wyo. Stat. Ann. § 24-9-101 (LexisNexis 1999) (emphasis added). Goodman argues that this language authorizes the viewers and the Board only to determine the "least possible damage" to *her* land, not to balance or equalize that damage with potential damage to the Vosses' property. In particular, Good-

---

4. In *Ferguson Ranch, Inc. v. Murray,* 811 P.2d 287, 290 (Wyo.1991), we declared that a civil action for a common law way of necessity is no

longer available, such having been supplanted by the statute.

man argues that the Board should not have extended the Vosses' access easement a quarter-of-a-mile west of the terminus recommended by the viewers—all on her property—just to prevent the Vosses from having to build a road that length on their own property.

[¶ 31] We will begin our discussion of this issue with a couple of observations. First, under the statute, the petitioner has the right to choose any "reasonable and convenient" route for the proposed private road, and neither the Board nor neighboring landowners can force the petitioner to accept an "illogical, uneconomic, and unproductive road." *Dunning*, 936 P.2d at 65, 66 (alternative route would have entered petitioner's property where stone cliffs and timber barred access). That leads to the logical conclusion that it is the petitioner who selects the persons to be notified of the petition. *Id.* at 65. In turn, that process limits the possible locations for the road because "the viewers and appraisers must locate the road within the lands of the property owners who were given notice."[5] *Id.* However, the petitioner only selects the general location of the road; it is the duty of the viewers and appraisers to "establish the exact location of the road so that it will do the least possible damage to the land through which it passes." *Id.* In applying the statute, the viewers and appraisers consider reason and convenience, which includes consideration of both the petitioner's situation and the respondent's situation, but in determining the "least possible damage" they look only to the property being condemned. *Id.* at 65; *see also Miller*, 4 P.3d at 889.

[¶ 32] We must not forget that the condemnation of a private road under the statute is a taking of property. The statute has its roots in article 1, sections 32 and 33 of the Wyoming Constitution, which limit the exercise of the power, and which require "just compensation." *Snell v. Ruppert*, 541 P.2d 1042, 1045 (Wyo.1975) *overruled in part on other grounds by Ferguson Ranch, Inc. v. Murray*, 811 P.2d 287, 290 (Wyo.1991). A good statement as to the Board's power under the statute can be found in *Ferguson Ranch, Inc. v. Murray*, 811 P.2d 287, 291 (Wyo.1991):

> We reemphasize that a landlocked landowner is not entitled to seek whatever road he desires or is most convenient to him. He still must seek, and the county commissioners are bound to approve, only such means of access to landlocked property as are reasonable.

[¶ 33] The viewers and appraisers selected the Goodman Road as the most reasonable access to the Voss property, and their report recommended that route, beginning at the county road, and terminating at the northeast corner of the Voss property, that being the least amount of the Goodman property that could be taken to accomplish the purpose of the statute. The Board, solely for the convenience of the Vosses, and to the detriment of Goodman, extended the easement another quarter-of-a-mile on Goodman's property.[6] The Board's action was contrary to the goal of doing the least possible damage to the property taken from Goodman, especially because the use of the road is expected to be heavy as a result of the Vosses' livestock operation on their property. Stock trucks and other heavy equipment will travel the road. In addition, although it is not a factor in determining damage to the Goodman property, the fact that the Board extended the easement past Goodman's fence line and cattle guard should have been a factor in the reasonableness and convenience analysis.

---

5. This statement of law, had it been observed, would have completely altered the course of this case. Once the viewers and appraisers and the Board rejected the proposed Creek Road access, their only option under the Vosses' first petition was to locate the easement somewhere else on the Stevens' property. Neither the viewers and appraisers nor the Board had the authority under the statute to locate the road on the BLM–Highway route. Further, when the Creek Road was rejected and the Vosses proposed the Good-man Road in their second petition, the easement could only be located on Goodman's property. Much of what has happened in this case was unnecessary and not consistent with the law.

6. Goodman does not contest the Board's authority to modify the report of the viewers and appraisers. *See Wagstaff*, 2002 WY 123, ¶ 24, 53 P.3d at 85.

[¶ 34] Under these circumstances, we cannot say that the Board followed the statutory mandate to "do the least possible damage to the lands through which the private road is located." It was possible to do less damage to Goodman's land by locating the road as recommended by the viewers and appraisers. A taking is not reasonable under the statute or the constitution where its purpose is not to create access but to reduce the condemnor's costs at the expense of the condemnee. Consequently, we will reverse the Board's order to that extent, and remand this matter to the Board for entry of an order limiting the road to the viewers' and appraisers' recommended location.

### Did the Board err as a matter of law in allowing the Vosses to install a cattle guard at the junction of their property and the private road?

[¶ 35] Wyo. Stat. Ann. § 24–9–102 (LexisNexis 1999), which is part of the 1985 version of the private road statutes in effect for purposes of this case, reads as follows:

The viewers and appraisers appointed in accordance with the provisions of W.S. 24–9–101 shall have power to determine in all cases whether or not gates shall be placed at the proper points on said road, and assess damages in accordance with such determination.

[¶ 36] In the instant case, rather than recommending the placement of a gate at the point where the proposed easement entered the Voss property, the viewers and appraisers recommended the placement of a cattle guard. In accepting this recommendation, albeit at a different location, the Board made the following findings:

The Viewers recommended that a cattle guard, as opposed to a gate, be used at the point of entry of the private road for Petitioners' property. In support of the Viewers' recommendation, the Board finds that cattle guards are more convenient than gates. Further, the Board notes that gates in this matter have been a source of conflict and hardship. The Board further finds that cattle guards are the primary means by which livestock are contained at Buford, in the area of Petitioners' proper-

ty. Under the 1985 version of W.S. 24–9–101, the Board has the authority to allow the use of a cattle guard on the entrance to the established road from Petitioners' property.[1] As the Board has determined that the location of the temporary access gate will be the point of entry for the private road, said cattle guard will be placed in conformance with this modification.

[¶ 37] In a footnote omitted from the above-quoted findings, the Board relied upon *Elk Horn Ranch, Inc. v. Board of County Commissioners, Crook County*, 2002 WY 167, ¶ 18, 57 P.3d 1218, 1225–26 (Wyo.2002), for the proposition that the private road statutes give the Board the authority to authorize cattle guards as opposed to gates. The holding in *Elk Horn Ranch* that, as a matter of law, cattle guards do not materially increase the burden on the servient estate, came from *Van Raden v. Harper*, 891 P.2d 78, 79 (Wyo. 1995). The Board's reliance upon *Elk Horn Ranch* is misplaced to some degree because we have overruled *Van Raden* and held that the question of whether a cattle guard, as opposed to a gate, increased the burden on the servient estate is a question of fact, not a question of law. *White v. Allen*, 2003 WY 39, ¶ 11, 65 P.3d 395, 399 (Wyo.2003). On the other hand, *White* did not overrule *Elk Horn Ranch*'s holding that a cattle guard, as opposed to a gate, may be ordered under the statute.

[¶ 38] Despite the Board's reliance upon *Elk Horn Ranch*, its conclusion that a cattle guard was appropriate will be affirmed because the Board actually reached that conclusion based upon factual findings, rather than ruling as a matter of law. Two such findings were that gates had been a source of conflict between the parties, and that cattle guards were the primary source of livestock containment in the area. In that regard, one of the viewers testified that there were two cattle guards on the Goodman Road in the near vicinity: one at the entrance from the county road and one on the north-south fence line west of the proposed terminus of the private road. There was sufficient evidence in the

record to support the Board's factual determination.[7]

### Did the Board err as a matter of law in denying the Vosses' motion for an award of costs under W.R.C.P. 68?

[¶ 39] The parties agree that the Board adopted the Wyoming Rules of Civil Procedure in its Rules for Contested Cases. The rule presently at issue is W.R.C.P. 68, which reads as follows:

> At any time more than 60 days after service of the complaint and more than 30 days before the trial begins, any party may serve upon the adverse party an offer, denominated as an offer under this rule, to settle a claim for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the court shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. *If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.* As used herein, "costs" does not include attorney's fees. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of settlement under this rule, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.

(Emphasis added.)

[¶ 40] On May 4, 2006, the Vosses served upon the Stevens a Rule 68 Offer of Settlement, the terms of which were that the Vosses would pay the Stevens $30,000.00 for an unrestricted permanent easement appurtenant on the Creek Road. That offer was not accepted. On June 20, 2006, the Vosses served upon Goodman a Rule 68 Offer of Settlement, the terms of which were that the Vosses would pay Goodman $50,000.00 for an unrestricted permanent easement appurtenant on the Goodman Road, traversing the entire distance from the county road, through the Goodman property, through the State land, and through additional Goodman property to the northwest corner of the Voss property, with two separate access points. This offer likewise was not accepted.

[¶ 41] On December 29, 2009, after issuance of the Board's final order, the Vosses filed a Motion for Petitioners Costs, pursuant to W.R.C.P. 68. Goodman and the Stevens each filed responses in opposition to the motion. Without a hearing, the Board issued an Order Denying Motion for Petitioners Costs on February 25, 2010. As to Goodman, the denial was based on the fact that the Vosses had not obtained the road they sought, and had not obtained two access points, and that the $50,000.00 offer was "clearly affixed" to the road proposed. The Board concluded that its final order was more favorable to Goodman than the W.R.C.P. 68 offer. As to the Stevens, the denial was based on the fact that the Vosses obtained nothing from the Stevens; in particular, they did not obtain an easement over the Creek Road, which was the basis of their W.R.C.P. 68 offer. On March 29, 2010, the Vosses petitioned the district court to review the Board's denial of its motion, and also moved the district court to certify the case to this Court pursuant to W.R.A.P. 12.09. The motion was granted and on April 19, 2010, the district court entered an Order of Certification to the Wyoming Supreme Court and Consolidation of Cases. We accepted certification on June 8, 2010, and this issue became our Docket No. S–10–0115.

[¶ 42] We briefly commented earlier herein as to the standard of review we

---

7. In its present version, Wyo. Stat. Ann. § 24–9–101(h) (LexisNexis 2009), requires the viewers to "determine whether or not any gates or cattleguards shall be placed. . . ."

apply in administrative agency appeals. *See supra* ¶ 3. There, we emphasized our role in determining whether the Board acted in conformance with the law. For purposes of the question now before us, we note that as to factual determinations we apply the substantial evidence test, which means reviewing the record to determine whether the agency's conclusions were "contrary to the overwhelming weight of the evidence in the record as a whole." *Dale*, 2008 WY 84, ¶ 22, 188 P.3d at 561. "The arbitrary and capricious standard remains a 'safety net' to catch agency action which prejudices a party's substantial rights or which may be contrary to the other W.A.P.A. review standards yet is not easily categorized or fit to any one particular standard." *Id.* at ¶ 23, at 561.

[¶ 43] The parties' positions are clear and straightforward. The Vosses argue that they obtained what they wanted from the proceedings, that they paid less than they offered in settlement, and that they were the "prevailing party" as that term is used in Wyo. Stat. Ann. § 1–14–124 (LexisNexis 2009) (costs allowed to successful plaintiffs in certain actions). The Stevens argue that the road as located does not cross their property at all, so they obtained what they wanted, and as to them, the Vosses obtained less than what they sought in their settlement offer. Goodman argues that the evidence supports the Board's determination that the final order was more favorable to Goodman than to the Vosses, that the Vosses' offer was not for a definite sum or an easily ascertainable amount, and that W.R.C.P. 68 should not even apply to statutory private road actions.

[¶ 44] Without determining whether or not W.R.C.P. 68 should apply in statutory private road actions, we will affirm the Board's denial of the Vosses' motion for the simple reason that, although they paid less than what they offered, they obtained less than what they sought. First, of course, they obtained nothing from the Stevens, so there is not much to argue there. As to Goodman, there is nothing in the record from which we can divine that $50,000.00 for an easement entirely penetrating Goodman's land was a "better deal" for her than $2,340.00 for the much more limited route

that was located. Goodman fought long and hard to try to prevent the Vosses from obtaining "deep" access into her property, and she succeeded in that goal.

## CONCLUSION

[¶ 45] Goodman's petition for review was timely filed because it was filed within 30 days of the Board's order, which was an appealable order under the rules. Goodman is barred, however, from relitigating the issues of whether the Voss property is landlocked and whether the Vosses filed their private road petition in good faith, those issues having been previously decided against her below, and affirmed by this Court. The remand was for the purpose of selecting a different route; it did not start the case over from scratch.

[¶ 46] The Board was authorized to amend the viewers' report, but the amendment in this case violated the statutory mandate that the road be located so as to do the least possible damage to the land over which it is located. The viewers recognized that ending the easement at the northeast corner of the Voss property did the least possible damage to Goodman's property, and they reported accordingly. The extension of the road by the Board deeper into Goodman's property created additional damage to the Goodman property, solely as a convenience to the Vosses.

[¶ 47] The Board did not err as a matter of law in allowing the Vosses to install a cattle guard where the easement entered their property because this Court's precedent has established that, if sufficient facts are proven, a cattle guard rather than a gate may be installed under the private road statute. And finally, the Board did not err as a matter of law or fact in denying the Vosses' motion for an award of costs. It is not at all clear from the record that the eventual result of the proceedings put the Vosses in a better position, or Goodman in a worse position, than what was offered.

[¶ 48] Affirmed in part and reversed in part and remanded to the district court for further remand to the Board for entry of an order consistent herewith. That remand

shall include a recomputation of damages based upon the decreased amount of property allowed to be taken under this opinion.

HILL, J. dissenting.

[¶ 49] I believe that the Board's decision should be reversed because the Vosses are not landlocked; consequently, I respectfully dissent from the majority decision. Ms. Goodman should not be collaterally estopped from litigating the issue of whether the BLM road is a public road, and accordingly, whether the Vosses are landlocked. She had no opportunity or reason to litigate the public nature of the BLM road in the first action because the Vosses were seeking a private road along the Creek Road, which only affected the Stevens property. Once the Vosses changed their chosen route to one over the Goodman property, Ms. Goodman was entitled to freely litigate all relevant issues, including whether the Vosses were actually landlocked and, as part of that argument, the public nature of the BLM road.

[¶ 50] The private road statute, Wyo. Stat. Ann. § 24–9–101 (Lexis 1999), allows a taking of private property. Section 24–9–101 states:

Any person whose land **has no outlet to, nor connection with a public road,** may apply in writing to the board of county commissioners of his county for a private road leading from his premises to some convenient public road. [Emphasis added.]

In order to pass constitutional muster, the private road must be necessary in the sense that the petitioner must be landlocked. *Reidy v. Stratton Sheep Co.*, 2006 WY 69, ¶ 11, 135 P.3d 598, 604 (Wyo.2006).

[¶ 51] The route initially chosen by the viewers and appraisers was a modified version of the Highway–BLM road. The chosen route included access over the BLM road, pursuant to a thirty-year license; the Stevens property, pursuant to an easement which limited access to a single land owner and would not provide access if the Voss property were divided; the Goodman property, pursuant to an unrestricted easement;

and a bump out on the Goodman property to avoid property belonging to a landowner who was not included as a party in the private road action.[8] The only part of the modified Highway–BLM road that was not an existing road was the "bump out." *Voss v. Albany County Commissioners*, 2003 WY 94, ¶¶ 3, 4, 7, 74 P.3d 714, 716–18 (Wyo.2003) (*Voss I* ).

[¶ 52] The district court reversed, "ruling that the Highway–BLM road did not provide the Vosses adequate legal access to their land because the BLM Right–of–Way Grant does not provide legally enforceable permanent access." *Voss I*, ¶ 8, 74 P.3d at 718. On appeal to this Court in *Voss I*, we agreed with the district court that the BLM Right–of–Way which had a thirty-year limit and was assignable only with approval of the BLM did not " 'constitute an outlet or connection within the purview of the statute.' " *Voss I*, ¶ 13, 74 P.3d at 719, quoting *Reaves v. Riley*, 782 P.2d 1136, 1137 (Wyo.1989). We also ruled that, because the Stevens easement was restricted, it did not provide the appurtenant access contemplated by the statute. *Id.*, ¶ 31, 74 P.3d at 723.

[¶ 53] On remand, the Stevens recorded a right-of-way easement in favor of the public across their land along the modified Highway–BLM route originally chosen by the viewers. The respondents then filed a motion to dismiss the Voss petition for a private road on the basis that the Vosses were no longer landlocked. As part of their argument, the respondents asserted that the BLM road was actually a public road. They cited to our ruling in *Reidy* as confirming that the issue of whether the BLM road was public was not decided in *Voss I*. In response, the Vosses stated that the issue of whether they were landlocked was decided in *Voss I* and, under the preclusion doctrines of res judicata, collateral estoppel and law of the case, could not be reopened.

[¶ 54] The Board of County Commissioners ruled on the respondents' motion to dismiss as follows:

The Board FINDS that the decision of [*Voss I* ] is the "law of the case," affirming the determination by implication of this

---

**8.** Ms. Goodman has since conveyed her property along the Highway–BLM route to the Stevens.

Board that Petitioners established the necessity of a private road, and that they are "any person whose land has no outlet to, nor connection with a public road" under Wyo. Stat. Ann. § 24–9–101 (Lexis 1999). The Board is bound by *res judicata* to its findings as affirmed by the Supreme Court.

The Board further FINDS that Respondents' position in their Motion to Dismiss that the BLM road is a "public road" is not a relevant inquiry in view of the underlying basis of the decision in *Voss I*. In their cross-appeal in *Voss I*, Respondents stated their issues as:

1. Does BLM land containing no restrictions on use by motor vehicle constitute a public road such that it is not a factor in determining whether a land owner's property is landlocked under W.S. § 24–9–101?

2. If crossing BLM land is a factor, does a right of way grant issued by the BLM pursuant to the *Federal Land Policy and Management Act* ... which is for a term of 30 years and renewable, constitute an "outlet to, or connection with a public road" under W.S. § 24–9–101?

The Supreme Court affirmed the decision of the District Court that the Highway–BLM road did not provide the Vosses adequate legal access to their land because the BLM right of way does not provide legally enforceable permanent access. The Supreme Court found that the BLM grant to Voss of a duration of 30 years, although renewable, the renewal was not guaranteed. The permit was found to be personal to Vosses and did not pass automatically upon conveyance of the property. The Court found that since the BLM road does not constitute an outlet or connection within the purview of W.S. § 24–9–101, and the BLM is not subject to the Board's jurisdiction, the Petitioners' application is remanded to the Board for reconsideration in a manner consistent with its decision. Although the *Voss* case was distinguished in *Reidy v. Stratton Sheep Company*, it was not reversed or modified and remains as precedent in these proceedings.

The Board ORDERS that *Respondents' Motion to Dismiss Petition for Private Road* be and the same is hereby denied. [Record citations omitted.]

[¶ 55] The majority decision accepts the collateral estoppel rationale employed by the Board. Collateral estoppel applies when there has been a final adjudication on the merits and the same issue is raised in a subsequent action between the same parties. Two of the requirements for application of collateral estoppel are: the prior adjudication resulted in a judgment on the merits, and the party against whom collateral estoppel is asserted was given a full and fair opportunity to litigate the issue in the prior proceeding. *Erwin v. State, Dep't of Family Services*, 2010 WY 117, ¶ 10, 237 P.3d 409, 412–13 (Wyo.2010). *Voss I* and the case before us involve the **same action**. There had been no final judgment on the merits when *Voss I* was remanded. In addition, Ms. Goodman did not have a full and fair opportunity to litigate the public nature of the BLM road. The Vosses were not seeking a private road across Goodman property in *Voss I*. They were seeking to condemn the Creek Road across Stevens. Thus, Ms. Goodman had no interest in proving the Vosses were not landlocked or that the BLM road was public. Because she did not have a full and fair opportunity to litigate those issues, Ms. Goodman's arguments should not be barred by collateral estoppel.

[¶ 56] In an alternative ruling, the majority concludes that Ms. Goodman is precluded from litigating those issues by the law of the case doctrine.

Under the law of the case doctrine, a court's decision on an issue of law at one stage of a proceeding is binding in successive stages of the litigation. *Triton Coal Co. v. Husman, Inc.*, 846 P.2d 664, 667 (Wyo.1993), citing 1B James W. Moore, Jo Esha Lucas & Thomas S. Currier, *Moore's Federal Practice*, ¶ 0.404[1] (2d ed.1983). Ordinarily, the law of the case doctrine requires a trial court to adhere to its own prior rulings, the rulings of an appellate court, or another judge's rulings in the case or a closely related case. *Id.* at 667–68. The law of the case doctrine is a

discretionary rule which does not constitute a limitation on the court's power but merely "expresses the practice of courts generally to refuse to reopen what has been decided." *Brown v. State*, 953 P.2d 1170, 1174 (Wyo.1998).

*Boykin v. Parkhurst (In re Parkhurst)*, 2010 WY 155, ¶ 15, 243 P.3d 961, 966 (Wyo.2010), quoting *Lieberman v. Mossbrook*, 2009 WY 65, ¶¶ 28–29, 208 P.3d 1296, 1305–06 (Wyo. 2009).

[¶ 57] There are exceptions to application of the law of the case doctrine:

One of those exceptions applies when the evidence in a subsequent trial is substantially different from that presented in the earlier proceeding. *Id.* Additionally, the law of the case doctrine applies only to issues actually decided, not to issues left open. 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4478 (2d ed. 2002).

*Boykin*, ¶ 15, 243 P.3d at 966. See also, *Wessel v. City of Albuquerque*, 463 F.3d 1138, 1144 (10th Cir.2006).

[¶ 58] Both of these exceptions apply here. The facts, including the existence of the public easement granted by Stevens, have changed since the first proceeding, and as we stated in *Reidy*, ¶ 23, 135 P.3d at 607, the issue of whether the BLM road was public was not actually decided in *Voss I*. As such, the law of the case doctrine does not prohibit consideration of the nature of the BLM road and whether, on the facts as they now exist, the Vosses are landlocked. Moreover, the law of the case doctrine is discretionary. I think it is appropriate and, in fact, imperative to allow the respondents to argue that the legal status of the route initially chosen by the viewers had changed since *Voss I*, such that the Vosses have legally enforceable access and are not landlocked under the statute.

[¶ 59] I can certainly appreciate the Board's and the majority's efforts to reach a final resolution in this case, particularly in light of the fact that this matter has been dragging on since 1999. However, if the Vosses are not landlocked, then there is no necessity and, consequently, no constitutional

basis to allow a taking of the Goodman property. See, *Reidy*, ¶ 11, 135 P.3d at 604; Wyo. Const. art. I, § 32. By refusing to allow the respondents to argue that the Vosses were no longer landlocked, the Board and this Court have turned a blind eye and ignored the reality of the situation.

[¶ 60] Once the procedural hurdle is crossed, the Court must consider the merits—whether the record supports a finding that the Vosses are landlocked and, as part of that analysis, whether the BLM road is public in nature. The evidence is clear that the BLM road is open to the public. In many ways, it is similar to the Forest Service Road considered in *Reidy*. In addition, the evidence established that the Vosses and their predecessors have used the road to access their property for many years. In fact, that is the precise route (with the exception of the bump out) the Vosses used during the pendency of this very long action. Thus, I would conclude that the BLM road is public in nature and it, together with the public easement given by the Stevens, provides legally enforceable access to the Vosses. They simply are not landlocked.

[¶ 61] The Board concluded that, even if it could consider the Highway–BLM road, it would rule that the Vosses were landlocked because that road is "unreasonable, inconvenient, illogical, uneconomic and unproductive." That conclusion is incredible considering that the Board is discussing the exact same road initially chosen by the viewers and confirmed by it after the first hearing. How the exact same route changed from being the one chosen by the Board to one that is unreasonable, inconvenient, illogical, etc. is hard to fathom.

[¶ 62] The vast majority of the Board's findings about the inconvenience of the Highway–BLM road pertain to attributes of the Vosses property. The primary concern is the steepness of the road grade on the Vosses property, which can make traveling problematic, particularly in winter. We considered a similar argument in *Reidy* when Stratton Sheep claimed that it was entitled to a private road across the Reidy property because it was difficult to access the corrals in the southern part of its property from the

north where the Forest Service road entered its property. We declined to address whether § 24–9–101 allows establishment of a private road "to remedy access difficulties related to barriers within the applicant's land" because the evidence did not establish the costs of constructing a road within the tract or that such road construction would be unusually difficult. *Reidy,* ¶ 38, 135 P.3d at 611 (emphasis in original). In this case, the evidence established that the road within the Voss property could be made more convenient with a relatively small expenditure of the funds. Ms. Goodman made similar improvements to her road, which is why the Vosses wanted to use it to access their property. So, even if difficulties within the Voss property were properly considered, the evidence does not establish the level of substantial inconvenience required to justify the taking of a private road.

[¶ 63] The other aspect of the modified Highway–BLM road that the Vosses argue make it substantially inconvenient is the necessity of constructing the "bump out" to avoid crossing property belonging to a landowner who had not been made a party to the proceeding. *Voss I,* ¶ 7, 74 P.3d at 717–18. The construction will apparently be fairly expensive.[9] However, it was not seen as prohibitively expensive by the viewers or the Board when they initially chose that route instead of the Creek Road. Consequently, I would rule that the modified Highway–BLM Road provides sufficient access to the Vosses and that they are not landlocked.

[¶ 64] The Vosses purchased property on top of a mountain in Wyoming. It should not have come as a surprise to them that there would be certain inconveniences and expenses associated with ownership of mountain property and the decision to live there year round. The inconveniences with using the Highway–BLM Road, as they and their predecessors have been doing for years, do not justify a taking under our constitution or our private roads statute. I would reverse.

---

9. The respondents have consistently argued that the Vosses did not proceed in good faith when they purposely omitted the absent landowner from the private road action, thereby making it impossible for the Board to order them to use their historical access. The point is well taken. Had they noticed that landowner, they could have been required to use the existing Highway–BLM road and there would have been no need to construct the bump out or incur the additional expense associated with such.