FILED
United States Court of Appeals
Tenth Circuit

May 31, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

SIERRA CLUB,

      Plaintiff - Appellant,

v.

TWO ELK GENERATION
PARTNERS, LIMITED
PARTNERSHIP,

      Defendant - Appellee.

No. 10-8032

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 2:09-CV-00022-WFD)**

---

Elena Saxonhouse (and Sanjay Narayan of Seirra Club Environmental Law
Program, on the briefs), San Francisco, California, for Plaintiff - Appellant.

Michael C. Theis (and Andrew C. Lillie of Hogan, Lovells, US, L.L.P., Denver,
Colorado; Mary A. Throne of Throne Law Office, P.C., Cheyenne, Wyoming, on
the brief), for Defendant - Appellee.

---

Before **KELLY**, **TACHA**, and **LUCERO**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

      Plaintiff-Appellant Sierra Club filed this action on January 29, 2009 under

the citizen suit provision of the Clean Air Act ("CAA"), 42 U.S.C. § 7604(a)(3),

alleging that Defendant-Appellee Two Elk Generation Partners ("Two Elk") is attempting to build a coal-fired power plant ("Power Plant") with an invalid Prevention of Significant Deterioration ("PSD") permit in violation of the CAA.[1] The district court granted Two Elk's motion to dismiss, holding that Sierra Club's suit was barred by the doctrine of issue preclusion. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Background

Two Elk first proposed building the Power Plant in 1996, and the Wyoming Department of Environmental Quality ("DEQ") issued a construction permit, CT-1352, in February 1998. Aplt. App. at 14. The DEQ administers and enforces the Wyoming Environmental Quality Act and is the primary regulatory authority for air quality in Wyoming. See Powder River Basin Res. Council v. Wyo. Dep't of Envtl. Quality, 226 P.3d 809, 813 (Wyo. 2010). In February 2000, DEQ issued a revised permit, CT-1352A, which required Two Elk to begin construction no later than February 2002. Aplt. App. at 14. Two Elk received an extension until

---

[1] The following acronyms are utilized:

CAA      Clean Air Act
Council  Wyoming Environmental Quality Council
CWA      Clean Water Act
DEQ      Wyoming Department of Environmental Quality
PSD      Prevention of Significant Deterioration
WAQSR    Wyoming Air Quality Standards and Regulations

August 2002, but in September 2002, DEQ advised Two Elk via letter that CT-1352A was no longer valid because Two Elk had not commenced construction on the Power Plant. Id. at 14-15, 100. Two Elk appealed the DEQ's determination to the Wyoming Environmental Quality Council ("Council"), a separate and independent board of seven members that hears and determines cases arising under the laws, rules, regulations, standards or orders issued or administered by the DEQ. Id. at 15; Wyo. Outdoor Council v. Wyo. Dep't of Envtl. Quality, 225 P.3d 1054, 1056-57 (Wyo. 2010) (describing Council); Wyo. Stat. Ann. § 35-11-112. On May 29, 2003, the Council approved a joint stipulation between the parties, which resulted in a modified permit, CT-1352B (the "Permit"). Aplt. App. at 15. In accordance with the PSD provisions of the Wyoming Air Quality Standards and Regulations ("WAQSR")—which the EPA has determined comply with the CAA, 40 C.F.R. § 52.2630—the Permit provided that if (1) construction or modification did not commence by May 29, 2005 or (2) construction was discontinued for a period of twenty-four months or more, the Permit would become invalid. Aplt. App. at 78; 6 WAQSR § 2(h). Specifically, the Permit states that before May 29, 2005, Two Elk was required to (1) complete construction on any one of the following foundations: main boiler, main stack, stream turbine, or air-cooled condenser, and (2) enter into a binding contract to purchase a site-specific main boiler or steam turbine. Aplt. App. at 78. The Council retained jurisdiction over the matter to determine Two Elk's compliance

- 3 -

with the joint stipulation. Id. at 87.

At some point, DEQ determined that Two Elk commenced construction prior to May 29, 2005, as required by the Permit. Id. at 88. Two Elk then filed an unopposed motion to dismiss the matter before the Council. Id. at 87. On July 18, 2005, after a hearing at which the parties were given an opportunity to be heard concerning the motion, the Council issued an order ("2005 Order") finding that Two Elk had commenced construction on the Power Plant by pouring a foundation for the Power Plant's exhaust stack and entering into a contract to purchase a main boiler. Id. at 87-88. The Council concluded that the Permit was valid, dismissed the matter, and terminated jurisdiction. Id.

On August 22, 2007, DEQ sent a letter to Two Elk stating that the Permit was no longer valid because construction had been discontinued for more than twenty-four months since first commenced. Id. at 208. On October 19, 2007, Two Elk filed a Petition for Review and Request for Immediate Stay with the Council, asking the Council to review the revocation of the Permit. Id. at 145. On November 21, 2007, after Two Elk disclosed confidential business information to DEQ, the two parties entered a Joint Stipulated Settlement Agreement. Id. at 145-46. The Settlement stated that "[b]ased on its review of confidential business information and other documentation provided by [Two Elk], the [DEQ] has determined that [Two Elk] has not discontinued construction for a period of 24 months or more and is in compliance with [the Permit]." Id. at

- 4 -

72. On the same day, Two Elk and DEQ filed a Joint Motion for Dismissal of Appeal, Approval of Settlement Stipulation, and Request for Setting of Hearing. Id. at 91-93, 146.

The Council conducted a hearing on November 28, 2007 where Council members expressed concern that the delay in construction meant that the Permit was outmoded and did not require the implementation of newer and more efficient emissions technologies, and also that Two Elk was tying up a portion of Wyoming's allotted pollution. Id. at 104-06. Two Elk assured the Council that it was taking steps to complete construction, and a DEQ representative stated that the Settlement Agreement required Two Elk to apply newer technology, as required by DEQ-issued permits for other power plants. Id. at 97. On December 3, 2007, the Council issued an order approving the Settlement Agreement, approving the withdrawal of the DEQ's August 22 letter, and dismissing Two Elk's appeal ("2007 Order"). Id. at 114-15. The 2007 Order specifies that all the terms of the Settlement Agreement are adopted. Id. at 114.

At no point prior to the 2007 Order did Sierra Club attempt to intervene in the proceedings before the Council. Id. at 147. On December 20, 2007, however, Sierra Club filed a Motion to Intervene and for Reconsideration and Vacation of the Council's 2007 Order. Id. The Council determined that it lacked jurisdiction over the dispute and dismissed the motion. Id.

On December 20, 2007, Sierra Club also filed a Petition for Review of

Administrative Action in state district court pursuant to the Wyoming Administrative Procedures Act, Wyo. Stat. Ann. § 16-3-114. Aplt. App. at 144. Sierra Club argued, among other things, that none of the facts in the Joint Stipulated Settlement Agreement supported the Council's 2007 Order approving DEQ's determination that Two Elk had engaged in continuous, on-site construction during the relevant twenty-four month period. Id. at 147-48. The state court rejected this argument and affirmed the Council's 2007 Order on March 12, 2009. Id. at 160. On April 9, 2009, Sierra Club appealed to the Wyoming Supreme Court, but voluntarily dismissed that appeal. Id. at 313, 320.

On January 29, 2009, as the state court decision was pending, Sierra Club filed its citizen suit under the CAA in federal court, seeking a declaration that Two Elk lacked a valid permit to construct the Power Plant in violation of 42 U.S.C. § 7475(a), and penalties under 42 U.S.C. § 7604(g). Id. at 22. Specifically, Sierra Club asserted that the Permit is invalid because Two Elk failed to commence construction prior to May 29, 2005, and, even if it did commence construction, the Permit is still invalid because Two Elk discontinued construction for a period of twenty-four months after that time. Id. at 21-22. Two Elk filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that these issues were already decided by the Council and thus were barred by the doctrine of claim preclusion. Id. at 61-66. In addition, Two Elk argued that the court should abstain from exercising federal jurisdiction over the matter pursuant

- 6 -

to the <u>Burford</u> abstention doctrine. <u>Id.</u> at 51-61.

The district court declined to abstain under <u>Burford</u>, but granted Two Elk's motion to dismiss because Sierra Club's citizen suit was barred by the Council's 2005 and 2007 Orders under the doctrine of issue preclusion. <u>Id.</u> at 330-32, 336-45. Sierra Club moved for reconsideration, or, in the alternative, clarification pursuant to Fed. R. Civ. P. 59(e) based on the court's misunderstanding of the facts and new evidence. <u>Id.</u> at 382-385. The court denied the motion on March 23, 2010. <u>Id.</u> at 525.

On appeal, Sierra Club argues that the district court erred because the statutory language of the CAA establishes the circumstances in which a citizen suit may be precluded by a state action and those circumstances were not met here. In addition, Sierra Club contends that its citizen suit cannot be barred under the doctrine of issue preclusion because Sierra Club was not a party to the administrative proceedings and was not in privity with the DEQ, and the Council did not resolve disputed issues of fact in an adversarial proceeding. Aplt. Br. at ii-iii, 1-2. This court reviews a dismissal under Fed. R. Civ. P. 12(b)(6) de novo. <u>Moss v. Kopp</u>, 559 F.3d 1155, 1161 (10th Cir. 2009).


Discussion

A.    <u>Preclusion Under the CAA</u>

Sierra Club first argues that the statutory language of the CAA establishes

- 7 -

the only way in which a citizen suit may be precluded by a state action, and that those circumstances were not present here. Aplt. Br. at 31-32. Under the CAA, a citizen suit may not be commenced "if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right." 42 U.S.C. § 7604(b)(1)(B).

Sierra Club's argument that the CAA's statutory language embodies Congress's intent to displace the full faith and credit statute, 28 U.S.C. § 1738, and the common law doctrines of issue and claim preclusion is not persuasive. Numerous courts have applied § 1738 and the common law preclusion doctrines to citizen suits under the CAA or Clean Water Act ("CWA") where, at the time the citizen suit was commenced, the State or Administrator was not "diligently prosecuting" an enforcement action. See, e.g., Ellis v. Gallatin Steel Co., 390 F.3d 461, 473-74 (6th Cir. 2004); Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist., 382 F.3d 743, 757-65 (7th Cir. 2004); Froebel v. Meyer, 217 F.3d 928, 933-37 (7th Cir. 2000); United States EPA v. City of Green Forest, 921 F.2d 1394, 1403-05 (8th Cir. 1990); Wilder v. Thomas, 854 F.2d 605, 616-21 (2d Cir. 1988); see also St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref., LLC, 500 F. Supp. 2d 592, 601-03 (E.D. La. 2007) (expressly rejecting argument that the CAA's statutory language establishes the only way in which a

citizen suit may be precluded).

To be sure, "an exception to § 1738 will not be recognized unless a later statute contains an express or implied partial repeal." Kremer v. Chem. Constr. Corp., 456 U.S. 461, 468 (1982). The CAA contains no express language concerning § 1738 or the preclusive effect of related state court proceedings. Thus, any repeal must be implied. The Supreme Court "ha[s] seldom, if ever, held that a federal statute impliedly repealed § 1738." Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 380 (1996) (citations omitted). A federal statute can impliedly repeal § 1738 only if there is an "irreconcilable conflict" between the two statutes. Id. at 381 (quotation marks and citation omitted). There is no such conflict here.

The CAA's commencement bar to citizen suits applies only if the "Administrator or State has commenced and is diligently prosecuting" an enforcement action. 42 U.S.C. § 7604(b)(1)(B) (emphasis added). The Supreme Court has explained Congress's deliberate use of verb tense in the citizen suit provision of the CWA. See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., 484 U.S. 49, 59-60 (1987). As the Fourth Circuit has observed, "the verb tenses used in [the commencement bar to citizen suits in the CWA] and the scheme of the statute demonstrate that the bar was not intended to apply unless the government files suit first (and is diligently prosecuting such suit)." Chesapeake Bay Found. v. Am. Recovery Co., Inc., 769 F.2d 207, 208 (4th Cir.

- 9 -

1984); see also Adkins v. VIM Recycling, Inc., --- F.3d ----, 2011 WL 1642860, at *8 (7th Cir. May 3, 2011) (analyzing verb tenses of similarly worded commencement bar in the Resource Conservation and Recovery Act). The commencement bar does not apply here—where the Administrator or the State was not diligently prosecuting an enforcement action at the time the citizen suit was filed—and therefore does not conflict with our application of § 1738 or common law preclusion principles.

Applying the doctrine of issue preclusion, the district court held that Sierra Club's citizen suit is barred by the Council's 2005 and 2007 Orders. Aplt. App. at 345. The court explained that it need not consider the Wyoming district court's order in its preclusion analysis. Id. at 346. Under our preclusion analysis, we conclude that Sierra Club's citizen suit is barred, but on a slightly different rationale than the district court's. First, the issue of whether Two Elk engaged in continuous construction is precluded by the Wyoming district court's March 12, 2009 Order. In addition, as the federal district court concluded, the issue of whether Two Elk commenced construction before May 29, 2005 is precluded by the Council's 2005 Order.

B.     Preclusive Effect of the Wyoming District Court's March 12, 2009 Order

"'The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute,' 28 U.S.C. § 1738, which 'directs a federal court to refer to the preclusion law of the State in

which judgment was rendered.'" Brady v. UBS Fin. Servs., Inc., 538 F.3d 1319, 1327 (10th Cir. 2008) (quoting Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985)). "It is well established that judicial affirmance of an administrative determination is entitled to preclusive effect." Kremer, 456 U.S. at 480 n.21 (citations omitted); see also Goodman v. Voss, 248 P.3d 1120, 1127 (Wyo. 2011) (affording preclusive effect to judicial affirmance of administrative decision). "There is no requirement that judicial review [of an administrative determination] must proceed de novo if it is to be preclusive." Kremer, 456 U.S. at 481 n.21.

In deciding whether the Wyoming district court's affirmance of the Council's 2007 Order precludes the current suit, we must determine whether the decision would be entitled to preclusive effect under Wyoming law and whether it satisfied the minimum standards of due process. Id. at 481-82; Wilder, 854 F.2d at 616 (citing Kremer, 456 U.S. at 481) (applying common law preclusion to citizen suit under CAA). "Due process . . . only requires that a party have a full and fair opportunity to litigate its case." Crocog Co. v. Reeves, 992 F.2d 267, 270 (10th Cir. 1993) (citing Kremer, 456 U.S. at 482-83 & n.24).

Under Wyoming law, "[c]ollateral estoppel and res judicata are analogous, but not synonymous." Erwin v. Wyo. Dep't of Family Servs., 237 P.3d 409, 412 (Wyo. 2010) (quotation marks and citation omitted). Both doctrines "incorporate a universal legal principle of common-law jurisprudence to the effect that a right,

- 11 -

question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies." Id. (quotation marks and citation omitted). Res judicata bars the relitigation of previously litigated claims or causes of action, while collateral estoppel bars relitigation of previously litigated issues. Id. (citations omitted). We apply the doctrine of collateral estoppel here because the state court decided only one of the two issues presented to this court.

Courts should consider the following factors to determine whether collateral estoppel applies under Wyoming law:

> (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

Brockman v. Wyo. Dep't of Family Servs., 342 F.3d 1159, 1166 (10th Cir. 2003) (quoting Kahrs v. Bd. of Trs. for Cnty. Sch. Dist. No. 1, 901 P.2d 404, 406 (Wyo. 1995)).

The Wyoming district court's May 12, 2009 Order precludes the issue of whether Two Elk engaged in continuous construction of the Power Plant, as the four requirements of collateral estoppel under Wyoming law and the minimum requirements of due process are met. First, the issue—whether Two Elk engaged in continuous construction of the Power Plant—was identical. In state court,

- 12 -

Sierra Club argued that "none of the facts described in the settlement agreement support [the Council's] Order approving DEQ's determination that [Two Elk] engaged in a continuous program of physical on-site construction of [the Power Plant] between 2005 and 2007." Aplt. App. at 147. It makes the same argument here. The second and third elements are met because the court issued a judgment on the merits, and Sierra Club was a party to the proceeding. Finally, Sierra Club had a full and fair opportunity to litigate the issue before the court. A hearing was held on June 23, 2008 in which all parties were represented. Id. at 144. Although the arguments dealt primarily with the appropriateness of the Council as a party—Sierra Club initially named the Council as a respondent—both Two Elk and Sierra Club submitted briefs regarding the pertinent issues, and the court concluded that no further argument would be of assistance in determining the matter. Id. The court reviewed the entire record in making its ultimate decision. Id.

In its order, the court explained that "[a]s always, an agency's conclusions of law are reviewed de novo, and are afforded no deference. The legal conclusions will be affirmed only if they are in accordance with the law." Id. at 150 (citing Dale v. S&S Builders, LLC, 188 P.3d 554, 561-62 (Wyo. 2008)).[2]

_____

[2] While it is true, as the dissent observes, that Wyoming courts review the factual determinations of an agency under a substantial evidence test, see Goodman, 248 P.3d at 1132, the court here reviewed a legal determination—namely, whether Two Elk had engaged in "construction"—and

- 13 -

The court then addressed whether Two Elk's actions constituted "construction," defined under WAQSR Chapter 6 § 4(a) as "any physical change or change in the method of operation (including fabrication, erection, installation, demolition, or modification of an emissions unit) which would result in a change in emissions." Id. at 159. The definition of construction is the same under federal regulations. See 40 C.F.R. § 52.21(b)(8). After reviewing the record, the court concluded that Two Elk's activities met the definition; thus construction had not ceased for a period of twenty-four months or longer. Aplt. App. at 160. Because Sierra Club had a full and fair opportunity to litigate the issue of whether Two Elk engaged in continuous construction, the minimum standards of due process were met. See Crocog Co., 992 F.2d at 270.

Sierra Club's argument that preclusion is not appropriate because the Wyoming court reviewed only a closed record that Sierra Club never had the opportunity to develop is without merit. Aplt. Reply Br. at 32. Sierra Club did not attempt to intervene in the proceedings until after the Council issued its 2007 Order. Aplt. App. at 147. Indeed, during the federal district court's hearing on Two Elk's motion to dismiss, counsel for Sierra Club admitted that Sierra Club

---

afforded no deference to the Council's decision. This case cannot be compared to Doles v. State, 163 P.3d 819, 823 (Wyo. 2007), where an acquittal in a criminal case did not collaterally estop the State from a pursuing a forfeiture action because "[a] general verdict of not guilty in a criminal case simply does not answer the same question asked in a civil forfeiture action."

- 14 -

did not intervene at an earlier stage because it believed DEQ would adequately prosecute the matter.  Id. at 338-39.  Specifically, counsel stated that "the hope was that the state would enforce this issue of the permit becoming invalid.  And as far as the Sierra Club could tell, that was happening until we got word of the settlement agreement between Two Elk and DEQ in 2007, about a week before that was approved by council."  Id.  Further, Sierra Club never appeared at the Council hearing on November 28, 2007 to contest the Stipulated Settlement Agreement between Two Elk and DEQ, despite a week's notice that the Council would be holding a hearing on the settlement.  See Aplt. Br. at 55.  As the state court observed, "[t]hroughout the administrative process, [Sierra Club] remained mute and chose to speculate on the outcome of the dispute.  When the dispute was concluded and [Sierra Club] determined that misfortune had come their way, they then chose to voice their displeasure.  This conduct is contrary to the Wyoming supported policies of settlement and finality and will not be condoned."  Aplt. App. at 158.  "The fact that [Sierra Club] failed to avail [itself] of the full procedures provided by state law does not constitute a sign of their inadequacy." Kremer, 456 U.S. at 485 (citations omitted).

Accordingly, the Wyoming district court's March 12, 2009 Order affirming the Council's 2007 Order precludes the issue of whether Two Elk engaged in continuous construction.  We now address whether the Council's 2005 Order precludes the issue of whether Two Elk timely commenced construction on the

Power Plant.

C.      Preclusive Effect of the Council's 2005 Order

"The United States Supreme Court has 'long favored the application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those administrative bodies that have attained finality.'" Brockman, 342 F.3d at 1166 (quoting Astoria Fed. Sav. & Loan Assoc. v. Solimino, 501 U.S. 104, 107 (1991)).  The Council's 2005 Order is preclusive so long as Wyoming courts would give it preclusive effect.  See Brockman, 342 F.3d at 1165 (citing Univ. of Tenn. v. Elliot, 478 U.S. 788, 799 (1986)).

As the district court noted, the Wyoming Supreme Court generally applies collateral estoppel to administrative decisions.  See Elliot v. State, 247 P.3d 501, 503 (Wyo. 2011).  Accordingly, we consider the same collateral estoppel factors discussed above.  In addition, because an administrative agency is involved, we must address whether the agency was "'acting in a judicial capacity and resolve[d] disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'" Slavens v. Bd. of Cnty. Comm'rs, 854 P.2d 683, 685 (Wyo. 1993) (quoting United States v. Utah Const. & Mining Co., 384 U.S. 394, 422 (1966)).

1.      Elements One, Two, and Four of Collateral Estoppel Under Wyoming Law are Satisfied

Elements one, two, and four of collateral estoppel under Wyoming law are

met here.  See Brockman, 342 F.3d at 1166.  The issue—whether Two Elk commenced construction—was identical.  The 2005 Council proceedings ended with a judgment on the merits, as the Council determined that Two Elk had commenced construction, dismissed the matter, and terminated jurisdiction.  Aplt. App. at 88.  Finally, DEQ had a full and fair opportunity to litigate the issue before the Council.  Indeed, the Council held a hearing on June 27, 2005 at which the parties were given an opportunity to be heard concerning Two Elk's motion to dismiss.  Id. at 87; see also Pokorny v. Salas, 81 P.3d 171, 176 (Wyo. 2003) ("[T]he requirement is that the party be presented with the opportunity to litigate.").

      2.      DEQ and Sierra Club were in Privity During the Council's 2005 Proceedings

Under Wyoming law, "[c]ollateral estoppel may be applied to one who was a party to the prior proceeding or to one who was in privity with a party."  Worman v. Carver, 44 P.3d 82, 89 (Wyo. 2002).  To our knowledge, the Wyoming Supreme Court has not addressed whether privity may be established between a state agency and its citizens when the state is acting in its parens patriae capacity.

Sierra Club argues that we must look to the Supreme Court's recent opinion in Taylor v. Sturgell, 553 U.S. 880 (2008), to determine whether privity exists under Wyoming law.  In Taylor, the Court expressly rejected an expansive

- 17 -

doctrine of virtual representation as an exception to the general rule against nonparty preclusion, and described six recognized (non-conclusive) exceptions to the general rule under federal common law. 553 U.S. at 893-895; see also Pelt v. Utah, 539 F.3d 1271, 1282 (10th Cir. 2008) (discussing Taylor).

It is not clear how Taylor will affect the Wyoming Supreme Court's privity analysis. Some state courts, relying on the Supreme Court's statement in Richards v. Jefferson County, 517 U.S. 793, 797 (1996) that "[s]tate courts are generally free to develop their own rules for protecting against the relitigation of common issues or the piecemeal resolution of disputes," have not altered their preclusion standards after Taylor. See City of Chicago v. St. John's United Church of Christ, 935 N.E.2d 1158, 1168 (Ill. App. 2010); State v. Ohio Pub. Emps. Retirement Bd., 905 N.E.2d 1210, 1218 (Ohio 2009). The Wyoming Supreme Court has not addressed Taylor, but a recent opinion discussing privity does not mention Taylor. See Elliot, 247 P.3d at 503-04. In addition, the Taylor Court expressly stated that its list of exceptions "is meant only to provide a framework for [its] consideration of virtual representation, not to establish a definitive taxonomy," id. at 893 n.6, and the Court never discussed the doctrine of parens patriae or citizen suits. Because the Wyoming Supreme Court has not adopted Taylor, and because Taylor did not address whether privity may be established between a state agency and its citizens when the state is acting in its parens patriae capacity, we will not rely on Taylor here. Instead, mindful that the

Wyoming Supreme Court has relied on federal precedent in discussing privity for collateral estoppel purposes, see Worman, 44 P.3d at 89, and in deciding Wyoming air quality cases, see Powder River Basin Res. Council, 226 P.3d at 813, we predict that the Wyoming Supreme Court would rely on federal case law addressing whether the doctrine of parens patriae can establish privity under the CAA or CWA. See TMJ Implants, Inc. v. Aetna, Inc., 498 F.3d 1175, 1180 (10th Cir. 2007) ("Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." (quotation marks and citation omitted)).

The doctrine of parens patriae "refers to the 'right of a State to sue . . . to prevent or repair harm to its 'quasi-sovereign' interests.'" BP Am., Inc. v. Oklahoma, 613 F.3d 1029, 1031 n.* (10th Cir. 2010) (quoting Hawaii v. Standard Oil Co., 405 U.S. 251, 258 (1972)). "In order to maintain [a parens patriae] action, the State must articulate an interest apart from the interests of particular private parties . . . . The State must express a quasi-sovereign interest." Satsky v. Paramount Commc'ns, Inc., 7 F.3d 1464, 1469 (10th Cir. 1993) (quotation marks and citation omitted). "When a state litigates common public rights [under the doctrine of parens patriae], the citizens of that state are represented in such litigation by the state and are bound by the judgment." Id. at 1470 (citations omitted).

In Satsky, we concluded that citizens of Colorado were in privity with the

State of Colorado under the doctrine of parens patriae where the State filed suit against the defendant to protect its citizens against air pollution.  Id. at 1469. Similarly, in EPA v. City of Green Forest, the Eighth Circuit decided that plaintiffs who filed suit under the CWA were in privity with the EPA—which is charged with enforcing the CWA on behalf of all citizens—where the EPA, acting as parens patriae, brought an action against a polluter that resulted in a consent decree.  921 F.2d at 1403-04.  Both the State of Colorado and the EPA had the authority to assert common public rights and acted to protect citizens from damage to natural resources.

Relying on Satsky, the district court concluded that DEQ was in privity with the citizens of Wyoming under the parens patriae doctrine.  Aplt. App. at 339.  We agree.  The Wyoming Supreme Court recently explained that "[a]s the administrative agency statutorily charged with carrying out the purposes of the Environmental Quality Act, including the promulgation, administration and enforcement of the Act's provisions and any rules and regulations, DEQ represent[s] the State's legal interest . . . before the [Council]."  Wyo. Outdoor Council, 225 P.3d at 1059.[3]  DEQ had the authority to act on behalf of the citizens of Wyoming and acted to protect common public rights in the proceedings before

[3] The Wyoming Environmental Quality Act "is intended to be compatible with, and at least as stringent as, the federal Clean Air Act."  Powder River Basin Res. Council, 226 P.3d at 813.

the Council that culminated in the Council's July 18, 2005 Order. Aplt. App. at 87. DEQ was in privity with the citizens of Wyoming.

Even if Wyoming courts were to look to the more stringent standard for parens patriae articulated in Friends of Milwaukee's Rivers v. Milwaukee Metropolitan Sewerage District, we conclude that the citizens of Wyoming were in privity with the DEQ. 382 F.3d at 758-60. In Friends, the Seventh Circuit first explained that a non-party to a previous action can be in privity with an agency invested by law to represent the person's interests, but only if the representative prosecuted or defended the previous action with due diligence and reasonable prudence. Id. at 758-59 (citing Restatement (Second) of Judgments §§ 41(1)(d), 42(1)(e)). The court then looked to the language of the CWA to determine the meaning of "diligent prosecution" and concluded that "the focus of the diligent prosecution inquiry should be on whether the actions are calculated to eliminate the cause(s) of the violations." Id. at 759-60.

Our discussion of the CWA's "diligent prosecution" standard in Karr v. Hefner, 475 F.3d 1192, 1198 (10th Cir. 2007), is instructive.[4] In Karr, we explained that "[c]itizen plaintiffs must meet a high standard to demonstrate that

---

[4] We note that our use of the phrase "diligent prosecution" is not an interpretation of the CAA's statutory language in 42 U.S.C. § 7604(b)(1)(B). Rather, we are using the diligence standard to determine whether privity existed between DEQ and Two Elk under the parens patriae doctrine for purposes of collateral estoppel.

[the EPA] has failed to prosecute a violation diligently" under the CWA, id. at 1198 (citations omitted), and that government action need not be "far-reaching or zealous." Id. at 1197. In addition, we noted that "an agency's prosecutorial strategy [need not] coincide with that of the citizen-plaintiff," and that "an unsatisfactory result does not necessarily imply lack of diligence." Id.

DEQ was diligent in requiring compliance with the CAA before the Council in 2005. On October 23, 2002, Two Elk filed a petition with the Council contesting DEQ's decision that Two Elk's CT-1352A permit had terminated because Two Elk had failed to commence construction prior to August 20, 2002. Aplt. App. at 87. Two Elk and DEQ then entered into a Joint Stipulation and filed it with the Council on May 28, 2003. Id. The terms of the stipulation included an agreement to extend the deadline for commencing construction and to reduce certain emissions standards. Id. The Council approved the Joint Stipulation and retained jurisdiction over the matter to ensure compliance with the terms of the stipulation. Id. In accordance with the stipulation, DEQ issued the current Permit, which required Two Elk to commence construction before May 29, 2005. Id. at 88.

Two Elk submitted documentation showing that it commenced construction on the Power Plant to DEQ, and DEQ found as a matter of fact that "prior to May 29, 2005, [Two Elk] completed the construction of the foundation for the main stack, and entered into a binding written contract to purchase a site-specific

- 22 -

boiler." Id. Two Elk then moved to dismiss the matter before the Council. Id. at 87. On July 18, 2005, after a June 27, 2005 hearing at which the parties were given an opportunity to be heard concerning the motion, the Council found that "[Two Elk] has . . . commenced construction as required by [the Permit]," and dismissed the matter. Id. at 87-88.

Even though Sierra Club disagrees with the position DEQ took and was not satisfied with the result of the Council's 2005 Order, DEQ acted to ensure that Two Elk commenced construction before May 29, 2005, in accordance with the PSD Permit.

We conclude that DEQ was in privity with the citizens of Wyoming in the 2005 Council proceedings under the doctrine of parens patriae. Thus, DEQ was in privity with Sierra Club, which represents the interests of citizens of Wyoming.[5]

3. The Council Resolved Disputed Issue of Fact in an Adversarial Proceeding

Sierra Club also argues that the Council's 2005 Order does not preclude the

_____

[5] We reject Sierra Club's argument that it was not in privity with DEQ because of its national membership. As the Ninth Circuit has pointed out in an unpublished opinion, while a state acting pursuant to its parens patriae authority typically acts on the behalf of its own citizens, privity can still exist between the state and an organization with out-of-state members where the public interest being represented by both parties is overwhelmingly that of the state. N. Cal. River Watch v. Humboldt Petroleum, Inc., 162 F. App'x 760, 764-65 (9th Cir. 2006) (unpublished).

- 23 -

issue of whether Two Elk commenced construction because the Council never resolved disputed issues of fact in an adversarial proceeding as required by Wyoming law. See Slavens, 854 P.2d at 685. Sierra Club's contentions are not persuasive. As discussed above, the Council's 2005 Order expressly found and concluded that Two Elk "commenced construction as required by [the Permit];" thus, the Council resolved the disputed issue as to whether Two Elk had complied with the commence construction requirement of the Permit. Aplt. App. at 88. In addition, the proceeding that ended in the Council's 2005 Order was an adversarial proceeding, as it began when Two Elk appealed DEQ's decision that Two Elk's CT-1352A permit had terminated. Id. at 87.

Sierra Club's argument that the Council's 2005 Order should not be given preclusive effect because the Council did not make any findings of fact is without merit. Sierra Club cites Morgan v. City of Rawlins, 792 F.2d 975, 980 (10th Cir. 1986), where this court, applying Wyoming law, refused to apply preclusive effect to a state court decision "[a]bsent any findings of fact or conclusions of law in the [prior state court proceeding]." In Morgan, however, the state court dismissed the plaintiff's prior suit "with no written order . . . to elucidate the basis for the dismissal and no other findings to provide any shape or direction to this court's inquiry." Id. at 977. Without any evidence of the state court proceeding on the record, we were unable to determine whether the substantive issues of the plaintiff's § 1983 suit were litigated in the prior proceeding. Id. at

- 24 -

979. This differs from the current case, where the Council explained that progress had been made on a foundation for the main stack and a binding contract for a boiler existed, and decided the exact issue that Sierra Club asks us to decide, namely, whether Two Elk commenced construction on the Power Plant.

D.    The Dissent

The dissent contends that privity between Sierra Club and DEQ cannot be established under Satsky, Green Forest, or Friends, stressing that privity is not appropriate where the DEQ never initiated an action in federal court. It also argues that the court expands the doctrine of parens patriae such that any suit in which a state appears as a party is a parens patriae proceeding. We disagree and note that citizen suits under the similarly worded CWA are "meant to supplement rather than to supplant governmental action." Gwaltney, 484 U.S. at 60.

The dissent identifies and places great weight on various "limitations" the Satsky court placed on parens patriae actions. But the court never imposed such limitations. In Satsky, the court of appeals mentioned that the district court had determined the State represented its citizens, and then explained that the critical question for maintaining a parens patriae action is whether the state has "expresse[d] a quasi-sovereign interest," such as protecting its citizens from air pollution. 7 F.3d at 1469 (quotations marks and citation omitted). In crafting its framework, the dissent relies on factual background discussed in the district court opinion that was never analyzed by the court of appeals. The "limitations"

- 25 -

discussed by the dissent—whether the State sued in federal court and *affirmatively and expressly asserted* parens patriae status—simply were not part of our parens patriae analysis. And with good reason, it would link the doctrine to the choice of forum and elevate form over substance. The actual limitation that Satsky placed on a state's ability to maintain a parens patriae action is that it cannot sue to assert the rights of private individuals. This limitation does not apply here.

While "agency inaction," Green Forest, 921 F.2d at 1405, or writing a letter without any formal proceeding before a court or agency, Friends, 382 F.3d at 756 (citing PMC, Inc. v. Sherwin-Williams Co., 151 F.3d 610, 618-19 (7th Cir. 1998)), may not be sufficient to establish privity, these are not the facts before us. DEQ informed Two Elk via letter that its permit had expired for noncompliance. But Two Elk then initiated a formal proceeding against DEQ before the Council which culminated in the Council finding that Two Elk had timely commenced construction. That DEQ defended the action before the Council is of no consequence. See Restatement (Second) of Judgments § 42(1)(e) (A non-party may be precluded where the representative "prosecute[d] or defend[ed] the action with due diligence and reasonable prudence." (emphasis added)).

The dissent also misreads Friends. The court there never held that an action must take place in a court to establish privity under the doctrine of parens patriae. As the dissent observes, that question was never before the court.

Rather, the court "look[ed] to" the CWA to determine whether a State's action was "diligent" under the Restatement (Second) of Judgments § 41(1)(d). Friends, 382 F.3d at 759. The court concluded that the focus of the diligence inquiry is "whether the [State] actions are calculated to eliminate the cause(s) of the violations." Id. at 760. In this case, DEQ's actions were calculated to ensure that Two Elk's compliance with the CAA. That some courts have held that 42 U.S.C. § 7604(b)(1)(B) requires action in a court does not affect our analysis. We are applying Wyoming common law preclusion principles, which give preclusive effect to agency proceedings. We are not determining, and need not determine, whether a concurrent prosecution in a state agency proceeding bars commencement of a citizen suit under the CAA.

We do not hold, as the dissent contends, that a state agency's administrative adjudication of environmental regulations always creates privity. As we noted in Satsky, "[t]here is no definition of privity which can be automatically applied to all cases involving the doctrines of res judicata and collateral estoppel since privity depends upon the circumstances." 7 F.3d at 1469 (quotation marks and citations omitted). The circumstances here weigh in favor of preclusion. The DEQ—the state agency charged by statute with enforcing the Wyoming Environmental Quality Act and deemed by the Wyoming Supreme Court to represent the interests of Wyoming in air quality matters—defended an action concerning Wyoming's air quality before the Council. Nothing suggests

- 27 -

that the Council acted pro forma; rather the facts suggest that the Council was in fact concerned about emissions technologies and pollution allocation. Privity is appropriate here.

Finally, policy factors weigh in favor of preclusion. First, Sierra Club's failure to appeal the Council's 2005 Order and its decision to abandon its appeal of the Wyoming district court's March 12, 2009 order support preclusion under Wyoming law. In Slavens v. Board of County Commissioners, the Wyoming Supreme Court explained that the appellant's failure to appeal the state district court's decision reviewing an administrative decision weighed in favor of preclusion. 854 P.2d at 686; see also Kahrs, 901 P.2d at 407 ("[Plaintiff's] failure to seek a full judicial review of the board's decision prohibited her from instituting any subsequent action in the matter." (citations omitted)).

In addition, implicit in the Wyoming district court's holding that Two Elk did not cease construction is a subsidiary finding that Two Elk commenced construction in the first instance. As the court explained, the Permit required that "construction once commenced may not be discontinued for a period of twenty-four months or more." Aplt. App. at 159 (emphasis added). In order to determine whether Two Elk ceased construction, Two Elk must have commenced construction.

The public policy of finality of judgments also supports our conclusion. The Wyoming Supreme Court has repeatedly recognized that the doctrines of res

- 28 -

judicata and collateral estoppel are founded upon

> the interest held by society in having differences conclusively resolved in a single action thereby avoiding the vexation and expense which are associated with piecemeal litigation. The necessity for sustaining this social interest is the justification for the doctrines of res judicata and collateral estoppel. . . . These doctrines . . . promote the reliance by citizens of the state upon courts to settle their disputes and they conserve judicial resources.

Dowlin v. Dowlin, 162 P.3d 1202, 1207 (Wyo. 2007) (citation omitted). Sierra Club chose not to intervene in the 2005 and 2007 proceedings before the Council. It never appealed the Council's 2005 Order, and it abandoned its appeal of the Council's 2007 Order. It now attempts to second guess the position taken by DEQ and the final decisions made by the Council and the Wyoming district court. Wyoming's policy of finality of judgments favors against allowing Sierra Club to relitigate issues that have already been decided.

AFFIRMED.

10-8032, Sierra Club v. Two Elk

**LUCERO**, J., dissenting

Because my colleagues expand the well-defined principles of parens patriae to include preclusion based on state intra-agency proceedings and because they misapply the doctrine of collateral estoppel, I respectfully dissent.

The majority concludes that the common law applies to citizen suits under the Clean Air Act and thereby seeks to invoke parens partiae standing. But my colleagues ignore the Clean Air Act's impact on common-law principles.[1] Even assuming traditional preclusion doctrines were to apply, the 2005 and 2009 Orders lack preclusive effect.

## I

In determining whether the 2005 Order has collateral estoppel effect, the majority correctly observes that the Wyoming Supreme Court would look to federal law. (Majority Op. 17.) I disagree, however, with my colleagues' understanding of the

---

[1] The majority rejects outright Sierra Club's argument that the CAA's plain language displaces common-law preclusion doctrines, relying on "[n]umerous courts" that have applied the doctrines in CAA or Clean Water Act ("CWA") cases. (Majority Op. 8.) However, these cases assume without deciding that the common law controls the analysis. See Ellis v. Gallatin Steel Co., 390 F.3d 461, 473-74 (6th Cir. 2004) (applying res judicata without considering whether the CWA might displace the common law); Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewage Dist., 382 F.3d 743, 757-65 (7th Cir. 2004) (same); EPA v. City of Green Forest, Ark., 921 F.2d 1394, 1403-05 (8th Cir. 1990) (same); Wilder v. Thomas, 854 F.2d 605, 616-21 (2d Cir. 1988) (applying collateral estoppel without acknowledging the CAA might displace the common law). It is far from clear that common-law preemption survives 42 U.S.C. § 7604(b)(1)(B) intact. See Jeffrey G. Miller, Theme and Variations in Statutory Preclusions Against Successive Environmental Enforcement Actions by EPA and Citizens, 28 Harv. Envtl. L. Rev. 401, 416-25 (2004) (explaining the CAA's statutory preclusion device within the overall purpose of encouraging citizen suits).

manner in which federal law applies. My objection primarily concerns the third element of collateral estoppel: "whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication." Brockman v. Wyo. Dep't of Family Servs., 342 F.3d 1159, 1166 (10th Cir. 2003) (quotation omitted).

Three analytical frameworks could guide an inquiry into whether Sierra Club was in privity with the DEQ as to the 2005 Order. Examples of these analyses are set forth in the case law. The first, articulated in Satsky v. Paramount Communications, Inc., 7 F.3d 1464 (10th Cir. 1993), suggests that parens patriae is an extraordinary doctrine of standing, which precludes suits only when a state asserts the doctrine in federal court. The second, used by the Eighth Circuit in EPA v. City of Green Forest, 921 F.2d 1394, has the most general understanding of parens patriae preclusion.[2] The third, exemplified by the decision of the Seventh Circuit in Friends of Milwaukee's Rivers v. Milwaukee Metropolitan Sewage District, 382 F.3d 743, adopts the plain language of the citizen suit provision, requiring a diligent prosecution to support a determination that a state was privity with its citizens. Under any of these approaches, the majority's conclusion that the 2005 Order has preclusive effect is fatally flawed.

**A**

I do not quarrel with the majority's statement that a state is assumed to represent the interests of its citizens if a state sues another party in a parens patriae suit. Thus, if a citizen were to sue to redress an identical injury, the citizen suit may be precluded. Cf.

---

[2] The majority appears to interpret Satsky and Green Forest coterminously, but they are analytically distinct, as I explain below.

Satsky, 7 F.3d at 1470 ("When a state litigates common public rights, the citizens of that state are represented in such litigation by the state and are bound by the judgment." (citations omitted)); see also Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n, 443 U.S. 658, 692 n.32 (1979). My disagreement is with the majority's assertion that the DEQ was "acting in its parens patriae capacity." (Majority Op. 16.)

**1**

Parens patriae is a standing doctrine that allows states to vindicate their interests in federal court.[3] See New Mexico v. Gen. Elec. Co., 467 F.3d 1223, 1243 n.30 (10th Cir. 2006); see also Richard H. Fallon, Jr., et al, Hart and Wechsler's The Federal Courts and the Federal System 261-66 (6th ed. 2009). Although the term has sometimes been used more generally to refer to actions that a state takes on behalf of its citizens, its boundaries have never been expanded to include mere defenses a state agency asserts against a regulated entity appearing before the agency's adjudicatory branch. To the contrary, case law demonstrates that the term does not encompass such actions.

Properly applied, the parens patriae doctrine is utilized when a state purports to act for all of its citizens in litigation, generally before the federal courts. The core purpose of parens patriae is to extend "special solicitude" to states litigating in federal courts. Massachusetts v. EPA, 549 U.S. 497, 518-20 (2007). Because the states ceded to the

---

[3] The term may also refer to the common-law concept that the state has a duty to act as a guardian of children and the mentally disabled. This is the only way in which Wyoming courts have ever used the term. See, e.g., J.J.F. v. State, 132 P.3d 170, 177 (Wyo. 2006); cf. Alfred L. Snapp & Son, Inc. v. Puerto Rico, 458 U.S. 592, 600 (1982) ("Th[e] common-law approach, however, has relatively little to do with the concept of parens patriae standing that has developed in American law.").

federal government "[d]iplomatic powers and the right to make war," it was "to be expected that upon the [federal courts] would be devolved the duty of providing a remedy." Missouri v. Illinois, 180 U.S. 208, 241 (1901). Accordingly, parens patriae standing is a legal and equitable solution to interstate disputes that could otherwise be settled only by force, thus federal courts are compelled to entertain such suits.[4] This underlying rationale explains our willingness to give preclusive force to suits prosecuted by states in federal court. See Satsky, 7 F.3d at 1470. It also explains Satsky's insistence that a parens patriae suit is extraordinary, in that a state bringing such a suit must allege a special injury to its own interests. Id. at 1469.

Moreover, mere enforcement of an agency's organic statute is not a parens patriae suit. See United States v. Hooker Chems. & Plastics Corp., 749 F.2d 968, 986-87 (2d Cir. 1984) (emphasizing that an entity suing as parens patriae must actually purport to act in such a capacity). Instead, a state must affirmatively assert parens patriae status. In Satsky, Colorado did so in three ways. First, the governor signed an executive order permitting an extraordinary enforcement action by the Colorado Department of Health and Natural Resources. Satsky v. Paramount Commc'ns, Inc., 778 F. Supp. 505, 510 (D. Colo. 1991), rev'd on other grounds, Satsky, 7 F.3d. at 1464. Second, the initial litigation was brought by Colorado "as trustee of all natural resources located within its boundaries

---

[4] Although parens patriae generally refers to a state suing in federal court, some courts have loosely used the term "parens patriae" when referring more generally to the state's ability to sue on behalf of its citizens. See, e.g., Friends, 382 F.3d at 759. The rationale of Friends is discussed below. For the moment, it is sufficient to point out that we cannot dispose of this case solely on the Friends definition of parens patriae, which assumes the conclusion we are trying to establish.

on behalf of and for the benefit of the public." Id. at 510. Third, the state brought that round of litigation to term by entering into a consent decree for the express benefit of its citizens. Id. at 511.

Satsky also articulates the requirement that a state plead an injury to one of its quasi-sovereign interests. Id. In 1907, the Supreme Court explained that one such quasi-sovereign interest is a state's environment:

> This is a suit by a state for an injury to it in its capacity of quasi-sovereign. In that capacity the State has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain. It has the last word as to whether its mountains shall be stripped of their forests and its inhabitants shall breathe pure air.

Georgia v. Tenn. Copper Co., 206 U.S. 230, 237 (1907). One hundred years later, in Massachusetts, 519 U.S. 497, the Court reiterated this principle and emphasized that in order to "sue [as] parens patriae" a state should allege an injury that "is one that the State, if it could, would attempt to address through its sovereign lawmaking powers." Id. at 519 (quotation and citation omitted). The latter statement from the Court emphasizes, once again, that simple lawmaking or law enforcement does not amount to a parens patriae action. It is only after a state has come to the doors of a federal courthouse, and asked to be admitted to assert its quasi-sovereign interests, that a court may imbue it with parens patriae status.

Without the limitations articulated in Satsky, any suit whatsoever in which a state appears as a party, ipso facto, would be a parens patriae proceeding.

**2**

Satsky leaves no doubt that the Wyoming Department of Environmental Quality's

- 5 -

appearance before the Wyoming Environmental Council (both being under the same statutory umbrella[5]) could not constitute a proper parens patriae suit. This is so for three reasons.

First, the suit was not brought in federal court. It was brought before a state administrative agency. Although federal courts sometimes grant preclusive effect to state agency proceedings, the parens patriae doctrine is not a matter of comity between the state and federal judiciaries. Rather it is a doctrine of standing which affords state officials a platform from which to vindicate their quasi-sovereign interests in federal court. The 2005 Order is not entitled to the same preclusive effect we afforded the consent decree in Satsky or the "special solicitude" the Court gave to the state in Massachusetts because it did not arise from federal litigation.

Second, the DEQ did not assert that it was suing on behalf of the citizens of Wyoming. Cf. Hooker, 749 F. 2d at 986-87. In fact, the DEQ did not sue at all. Two Elk sued the DEQ before the Council to end the DEQ's supervision of its permit, and the DEQ merely defended the suit before eventually agreeing to settle the matter. Rather than enforcing the CAA against Two Elk, the DEQ did precisely the opposite: it relinquished its right to sue. These intra-agency proceedings stand in stark contrast to the parens patriae actions that we found preclusive in Satsky. Unlike the attorney general in Satsky, the DEQ never claimed to be acting in a manner that would bind the citizens of

---

[5] The DEQ is an executive branch department, an agency under the Wyoming Administrative Procedure Act, empowered to enforce the Wyoming Environmental Quality Act. Wyo. Stat. §§ 16-3-101(b)(i), 35-11-104, -110(a). That act also establishes the Council to act as the adjudicative body for the DEQ. §§ 35-11-111, -112.

- 6 -

Wyoming. The 2005 Order approving the settlement states that the DEQ and Two Elk were seeking an order "binding them" to the terms of the agreement.[6] (Emphasis added.) During the later state court proceedings, the DEQ remarked in passing that its actions were in the "public interest" and that Sierra Club's injury was "shared by both the general public and DEQ."[7] But the assertion of one kind of injury by a specific group of citizens, combined with a state's competing obligations to pursue relief for a different kind of injury, may not amount to preclusion. See Democratic Cent. Comm. of D.C. v. Wash. Metro. Area Transit Comm'n, 842 F.2d 402, 409-10 (D.C. Cir. 1988). In the case before us, Sierra Club pled an injury to its environmental interests. What the DEQ considered were both economic and environmental factors during the permitting process, as required by its mandate. See Wyo. Stat. § 35-11-102 (defining part of the DEQ's mission as the development and use of "air . . . resources of the state"). Applying the foregoing principles, the conclusion that the DEQ has been acting as parens patriae throughout the permitting process is unsupportable.

Third, the DEQ's exercise of sovereign authority was necessarily limited by the CAA. In expressly creating a federal right of action, the CAA minimizes a state's need to assert "quasi-sovereign" interests apart from the federal scheme. Cf. Tenn. Copper Co., 206 U.S. at 237-38. And although the statute entitles Wyoming to "special solicitude"

---

[6] And a later settlement discussed in the 2007 Order disclaimed any binding effect on non-parties ("[t]he rights, duties, and obligations contained in this Agreement shall operate only among [the DEQ and Two Elk]").

[7] This was the basis for the DEQ's argument that Sierra Club did not have state standing. The state court rejected this notion, concluding that Sierra Club had standing.

should it seek to sue in federal court, <u>Massachusetts</u>, 549 U.S. at 518-20, it does not extend that solicitude so as to require federal courts to give preclusive effect to every defensive act by an administrative agency that a regulated entity chooses to call a CAA enforcement action.

By intentionally overlooking the circumscribed view of parens patriae expressed in <u>Satsky</u>, the majority hopes to create a new rule that a state agency's administrative adjudication of environmental regulations <u>always</u> creates privity. This expansion of the parens patriae doctrine would render citizen suit provisions a dead letter in spite of the Supreme Court's admonition against "extraordinary application of the common law of preclusion" that undermines federal statutes. <u>Taylor v. Sturgell</u>, 553 U.S. 880, 903 (2008).

**B**

Although <u>Satsky</u> strongly supports the conclusion that Sierra Club cannot be precluded based on a parens patriae rationale, Sierra Club would still prevail under the frameworks established by our sister circuits. The Seventh Circuit and the Eighth Circuit have grappled with the disconnect between the common law and the citizen suit provisions of the CAA and CWA. Each has adopted a test to determine whether a state has adequately represented the interests of its citizens and thus established privity. <u>Compare</u> <u>Green Forest</u>, 921 F.2d at 1403-04, <u>with</u> <u>Friends</u>, 382 F.3d at 758-59; <u>cf.</u> <u>Atl. States Legal Found., Inc. v. Eastman Kodak Co.</u>, 933 F.2d 124, 127 (2d Cir. 1991) (analyzing the CWA statutory preclusion device without considering the parens patriae doctrine at all). The majority evaluates Two Elk's preclusion claim under both <u>Green</u>

Forest and Friends and concludes that the Council's 2005 order is preclusive under either test. I disagree.

## 1

In Green Forest, the Eighth Circuit considered the estoppel effect of a consent decree entered into by the EPA and Tyson Foods. See 921 F.2d at 1397, 1403-04. Citizens filed a CWA suit against Tyson prior to the EPA's enforcement action. Id. at 1400. The citizen plaintiffs argued that their suit should be allowed to continue despite the consent decree because the CWA's preclusion provision only bars citizen suits filed after the commencement of a prosecution by the EPA or the state. Id. at 1403. The Eighth Circuit rejected this contention, concluding the citizens' suit was barred by common-law estoppel. Id. at 1405.

Green Forest described parens patriae in the most general sense. Although the cases it relied upon clearly refer to suits brought by states in federal court under parens patriae as a doctrine of standing,[8] the court focused on the EPA's role as "preeminent"

---

[8] Green Forest's reliance on these precedents was questionable. For example, the court relied up on United States v. Olin Corp., 606 F. Supp. 1301, 1305 (N.D. Ala. 1985), for the proposition that the federal government may have "proper parens patriae" status. Olin in turn relied upon New Jersey v. New York, 345 U.S. 369, 373 (1953) for that proposition. 606 F. Supp. at 1305. Yet New Jersey contains no mention of the possibility that parens patriae is anything other than a doctrine of standing that may be asserted by states. 345 U.S. at 372 ("[Parens patriae] is a recognition of the principle that the state, when a party to a suit involving a matter of sovereign interest, must be deemed to represent all its citizens." (quotations omitted)). The question of EPA's standing in Green Forest or Olin has nothing to do with its representative capacity for citizens. When the federal government or one of its agencies brings suit, its standing is usually based on its power, defined by Congress, to redress violations of the laws of the United States. This may be in tension with courts' current understanding of Article III standing, but it is nonetheless axiomatic. See Edward A. Hartnett, The Standing of the United States: How

enforcer of the CWA "on behalf of all citizens." Id. at 1404. Once the EPA negotiated a consent decree, the court held, there was no longer a need for citizen suits. Id. Nevertheless, the Green Forest court roundly rejected Tyson's contention that the "EPA's decision not to commence an action against it is binding upon the citizens." Id. at 1405. Such an interpretation was held impermissible because the CWA "make[s] clear that agency inaction is precisely the circumstance in which private action is appropriate." Id. (citation omitted).

**2**

In Friends, the Seventh Circuit dealt directly with the interaction between the citizen suit provisions and common-law preclusion. 382 F.3d at 759; see also St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Refining, L.L.C., 500 F. Supp. 2d 592, 605-06 (D. La. 2007) (adopting the Friends approach). In determining the preclusive effect of a settlement agreement between Wisconsin and a polluter, the Seventh Circuit turned first to common-law preclusion. Starting from the assumption that parens patriae sometimes places the state in privity with its citizens, the court nonetheless noted that a third party may not be bound if "the representative failed to prosecute or defend the action with due diligence and reasonable prudence." Friends, 382 F.3d at 759 (quoting Restatement (Second) of Judgments § 42(1)(e) (alterations omitted)).[9]

Focusing on this aspect of common-law preclusion, Friends determined that the

Criminal Prosecutions Show that Standing Doctrine is Looking for Answers in all the Wrong Places, 97 Mich. L. Rev. 2239, 2247-51 (1999).
     [9] The Wyoming Supreme Court has favorably cited the Restatement (Second) of Judgments on matters of preclusion. See, e.g., Fuentes v. Jednat, 229 P.3d 949, 951-52 (Wyo. 2010).

common law and the statute dovetail neatly:  the central question becomes whether a state diligently prosecuted a matter.  Friends, 382 F.3d at 759.  A citizen suit is barred only if the state has initiated a "judicial action . . . capable of requiring compliance with the Act and [which] is calculated to do so."  Id. (quotation omitted).  As the majority correctly notes, an agency's "prosecutorial strategy" need not be the same as the citizen's.  (Majority Op. 19 (quoting Karr v. Hefner, 475 F.3d 1192, 1197 (10th Cir 2007)).

This approach balances our duties to give effect to state judgments under the Full Faith and Credit Statute, 28 U.S.C. § 1738, and the need to preserve the integrity of the federal statutory scheme.  As one court has put it:

> [the Friends approach] does not give the polluter a pass simply because it has reached a settlement with a government enforcement agency.  On the other hand, it does not require a showing of immediate, perfect compliance when the polluter and a government enforcement agency have reached a settlement that puts into place a complex remediation plan.

St. Bernard Citizens, 500 F. Supp. 2d at 606.  Although the Friends framework grants solicitude to state agency decisions, it also protects the ability of citizen suits to "supplement" governmental efforts to abate pollution.  Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 60 (1987).  Because the CAA provides a statutory guide to cases in which a diligent prosecution has taken place, I would adopt the Friends test and apply it to the facts before us.

### 3

A faithful application of Friends leads inexorably to the conclusion that Sierra Club was not in privity with the DEQ.  The intra-agency action to which the majority would grant preclusive effect was initiated by Two Elk before the Wyoming

- 11 -

Environmental Council, defended by the Wyoming Department of Environmental Quality, and settled through that same agency's proceedings. My colleagues determine that, under Friends, the DEQ diligently prosecuted the action below and the 2005 Order is preclusive. But Friends adopted the statutory test in defining privity. 382 F.3d at 759. The statute requires a state to have "commenced and [be] diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order." 42 U.S.C. § 7604(b)(1)(B) (emphasis supplied).

The Seventh Circuit did not have to consider the requirement in the CWA that the action be commenced in a court because the settlement at issue involved an adjudication before a Wisconsin state court. Friends, 382 F.3d at 750. The majority ducks the issue because it contends that it is not applying the statute. (Majority Op. 19 n.1.) But Friends is predicated on that statutory language. The majority's claim that it is relying on Friends and its simultaneous disavowal of the very statutory language on which Friends is based is befuddling.

Fidelity to Friends requires a determination of whether a "judicial action is capable of requiring compliance with the Act and is calculated to do so." 382 F.3d at 759 (quotations omitted). The DEQ's actions fail this test. First and foremost, there was no "judicial action." Agency decisions may have preclusive effect under certain circumstances. See Slavens v. Bd. of Cnty. Comm'r for Uinta Cnty., 854 P.2d 683, 685 (Wyo. 1993) (explaining under which circumstances preclusion by an agency decision is appropriate). But the Friends approach to the CAA provides a guide to when preclusion is appropriate, and unambiguously requires adjudication in a court. "All but two of the

- 12 -

more than thirty courts asked to rule that an administrative tribunal is a 'court' for the purposes of [preclusion under the CAA or similar statutes] have refused to do so."[10] Miller, supra, at 437. Were the Wyoming Supreme Court to look to federal law, then, it would likely adopt this majority rule.

But even assuming, arguendo, that Friends permits an agency's decision to be given preclusive effect, the DEQ's purported enforcement actions in this case were not "diligent prosecutions" as that phrase is generally understood. Proceedings were initiated by Two Elk upon the DEQ's notification to the company that its permit expired. At a 2007 hearing, a representative of the DEQ explained that such letters are merely notifications and not any sort of "affirmative action in terms of repealing, revoking, renewing a permit." The DEQ's understanding of the role of its letter as non-prosecutorial is supported by the reasoning of the Seventh Circuit—as that court noted, "writing a letter would hardly be described as commencing or prosecuting an action."[11]

---

[10] The two outliers are Gardeski v. Colonial Sand & Stone, Co., Inc., 501 F. Supp. 1159 (S.D.N.Y. 1980) called into doubt by Friends of the Earth v. Consol. Rail Corp., 768 F.2d 57 (2nd Cir. 1985), and SURCCO v. PRASA, 157 F. Supp. 2d 160 (D.P.R. 2001). The Third Circuit also suggested such a contrary approach, see Baughman v. Bradford Coal Co., Inc., 592 F.2d 215, 217-18 (3d Cir. 1979), but has never adopted the minority rule.

[11] The majority points to the procedural history of this case as supporting a finding of estoppel. (Majority Op. 23 (citing Slavens, 854 P.2d at 686).) It notes that Sierra Club did not even attempt to intervene prior to the 2007 hearings, and that, after filing its suit under the Wyoming Administrative Procedure Act, it withdrew its petition for certiorari with the Wyoming Supreme Court and elected to file a federal suit. (Id.) Although I agree that failure to prosecute a suit generally supports a finding of preclusion under Wyoming law, this factor is trumped by the limitations on preclusion found in the CAA and acknowledged in Friends. Sierra Club's actions actually prove the state action was not preclusive. As Sierra Club points out, it did not intervene at first because it thought the state would diligently prosecute. It was only when it became clear the state would not

- 13 -

Friends, 382 F.3d at 756 (quotations omitted).  Because the DEQ did not prosecute at all, it could not have prosecuted diligently and the settlement is not entitled to preclusive effect under Friends.

**4**

For similar reasons, Sierra Club is not precluded from bringing the present action even under the approach in Green Forest.  In that case, the court squarely rejected the notion that declining to sue could curry preclusive effect.  Green Forest, 921 F.2d at 1406.  Further, Green Forest relied heavily upon the EPA's "preeminent role" as the enforcer of the CWA.  Id. at 1404.  Its conclusions do not intuitively apply in this case, in which the EPA was not involved and the settlement amounted simply to a stipulation of facts.  Additionally, although Green Forest relied predominantly on the common law, there must yet be a showing that the state was granted the authority to act on behalf of its citizens' interest.  See Restatement (Second) of Judgments § 41(1)(d) (1982); Democratic Cent. Comm., 842 F.2d at 409-10.  There has been no such showing.

Indeed, Sierra Club persuasively argues that the DEQ did not act in the citizen plaintiffs' interests.  There is no suggestion that Sierra Club shares any proprietary interest with Wyoming or the DEQ, which is generally required for a showing of privity.  See Wyo. Med. Ctr. v. Wyo. Ins. Guar. Ass'n, 225 P.3d 1061, 1065 (Wyo. 2010).  The group argued vigorously that its interests do not align with the agency's and established,

diligently prosecute that Sierra Club had to step in.  And the citizen plaintiffs' decision to abandon the state court proceeding was a sound choice given that they faced a high burden of proof in those proceedings, which, as discussed infra, is different for citizen suits under the CAA and militates against a finding of preclusion.

- 14 -

based on the DEQ's admissions, that the agency's objectives encompass economic goals as well as environmental ones. Sierra Club emphasized that the DEQ raised, and the Council considered, matters such as the crowding out of other businesses by Two Elk's slow or nonexistent construction process. Further the group pled below that it is a national organization, whose interests could not be fully represented by Wyoming during the proceedings before the Council.[12]

Thus, this case is unlike Karr, 475 F.3d 1192, in which the agency and the plaintiffs agreed the defendant was not compliant, but disagreed on the proper remedy to pursue. See id. at 1198. Sierra Club and the DEQ were at antipodes: one advocated prosecution and the other determined prosecution was not necessary. When courts have held a suit to be precluded by settlement or consent decree, the preclusive orders have contained "substantive provisions that on their face [were] directly designed to address" serious violations, St. Bernard Citizens, 500 F. Supp. at 606, or resulted in "more [compliance] than [p]laintiffs sought to achieve on their own," Karr, 475 F.3d at 1198. However, the 2005 Order confirms a settlement in which the agency and the company simply agreed that Two Elk was compliant with its permit. The order was no more than a stipulation to certain facts. The DEQ never "prosecuted" any violations by Two Elk because it did not believe a violation was taking place. I can find no instance in the case

---

[12] The majority concludes that this argument was waived. This is a strained and harsh reading of the record. Sierra Club explicitly pled that it was a national organization with members outside Wyoming. It further argued that the DEQ did not represent its interests. Sierra Club demonstrably preserved the issue of whether it was in privity with the DEQ; our waiver rules do not require a party to raise every possible sub-argument supporting its principal objection in order to preserve that position.

law of such a stipulation barring a citizen suit.

## II

Under Wyoming law, collateral estoppel does not apply when the proceedings sought to be estopped utilize a lower burden of proof than that utilized in the first proceeding. Elliott v. State, 247 P.3d 501, 503 (Wyo. 2011); Doles v. State, 163 P.3d 819, 823 (Wyo. 2007). Because of the dichotomous standards in the proceedings below, the 2009 Order cannot be preclusive.

In the state court proceeding, under a deferential substantial evidence standard, Sierra Club had the burden of showing "the agency's conclusions were contrary to the overwhelming weight of the evidence in the record as a whole." Goodman v. Voss, 2011 WL 667968, at *11 (Wyo. Feb. 25, 2011) (quotation omitted). In federal court, Sierra Club would only have to show by a preponderance of the evidence that Two Elk was not in compliance with the Act. Cf. Sierra Club v. Pub. Serv. Co. of Colo., Inc., 894 F. Supp. 1455, 1458 (D. Colo. 1995). There is a "significantly heavier" burden in the former case than in the latter. Elliott, 247 P.3d at 503. Just as an "acquittal on criminal charges does not prove that the defendant is [dispositively] innocent" in related civil proceedings, Doles, 163 P.3d at 823 (quotation omitted), the finding that there was substantial evidence supporting the Council's conclusion that Two Elk continued building does not preclude Sierra Club from showing otherwise by a preponderance of the evidence.

## III

Because I cannot concur with the majority's understanding of federal or Wyoming law, I respectfully **DISSENT**.

- 16 -